COPY

1  RONALD J. TENPAS
   Assistant Attorney General
2  Environment and Natural Resources Division
   United States Department of Justice
3  Washington D.C. 20530
   ANN C. HURLEY
4  Environmental Enforcement Section
   United States Department of Justice
5  301 Howard Street, Suite 1050
   San Francisco, California 94105
6  Telephone: (415) 744-6480; Facsimile: (415) 744-6476
   ann.hurley@usdoj.gov
7  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
8  R. MICHAEL UNDERHILL (State Bar No. 104986)
   Attorney in Charge, West Coast Office
9  Torts Branch, Civil Division, U.S. Department of Justice
   7th Floor Federal Bldg., Room 7-5395, P.O. Box 36028
10 450 Golden Gate Avenue, San Francisco, California  94102-3463
   Telephone: (415) 436-6648; Facsimile: (415) 436-6632
11 mike.underhill@usdoj.gov

12 Attorneys for Plaintiff United States of America

13 (Additional Attorneys on following page)

14

15              UNITED STATES DISTRICT COURT

16             NORTHERN DISTRICT OF CALIFORNIA

17

18 UNITED STATES OF AMERICA and the PEOPLE   ) Civil No.
   OF THE STATE OF CALIFORNIA, ex rel. the   )
19 CALIFORNIA DEPARTMENT OF FISH AND         ) IN ADMIRALTY
   GAME and the REGIONAL WATER QUALITY       )
20 CONTROL BOARD FOR THE NORTH COAST         )
   REGION,                                   )
21                                           )
                                             ) **CONSENT DECREE**
22            Plaintiffs,                     )
                                             )
23      vs.                                  )
                                             )
24 KURE SHIPPING S.A. and PATT MANFIELD CO., )
   LTD,                                      )
25                                           )
              Defendants.                    )
26                                           )

27

28

- 1 United States, et al. v. Kure Shipping S.A., et al.                    Consent Decree

E-filing RECEIVED
MAR - 7 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Edmund G. Brown Jr., Attorney General
    of the State of California
2   MARY HACKENBRACHT
    Senior Assistant Attorney General
3   ANITA E. RUUD (State Bar No. 72483)
    Deputy Attorney General
4   455 Golden Gate Avenue, Suite 11000
    San Francisco, California 94102-3664
5   Telephone: (415) 703-5605
    Facsimile: (415) 703-5480
6
    Attorneys for Plaintiff State of California
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.  PARTIES

This Consent Decree ("Decree") is made and entered into by and among the following parties (hereinafter referred to collectively as "the Parties" and individually as "Party"):

A.    Plaintiff United States of America ("the United States"), on behalf of the U.S. Department of the Interior ("DOI"), U.S. Fish and Wildlife Service ("USFWS"), the Department of Homeland Security ("DHS"), the United States Coast Guard ("USCG"), and the USCG National Pollution Funds Center, and each of them;

B.    Plaintiff People of the State of California ("State"), *Ex Relatione* California Department of Fish and Game ("CDFG") and the Regional Water Quality Control Board for the North Coast Region ("RWQCB"), and each of them (together with the parties specified in paragraph A above, jointly referred to as "Plaintiffs"); and

C.    Defendants Kure Shipping S.A. and Patt Manfield Co., Ltd, both sued *in personam* ("Settling Defendants").

# II.  INTRODUCTION

A.    On or about November 5, 1997, the M/V Kure, a vessel owned by Defendant Kure Shipping S.A. and operated by Defendant Patt Manfield Co. Ltd., struck the Louisiana Pacific Export Dock in Samoa, California, puncturing a fuel tank and resulting in the discharge of approximately 4,500 gallons of Intermediate Fuel Oil into Humboldt Bay (hereinafter, the "Spill"). Some of the oil from the Spill reached the open ocean, and came ashore at various locations. Oil product, including tarballs, was observed as far as 17.5 miles north of the mouth of Humboldt Bay. As a result of the Spill, the United States and the CDFG responded and incurred pollution removal costs and other damages.

B.    The oil from the Spill caused injuries to natural resources at sea and along the shore, including injuries to birds, fish, and their habitats, and also had an impact upon recreational uses of some of the resources. The Trustees for the Natural Resources injured by the Spill include the USFWS and the CDFG. The USFWS is a designated Trustee pursuant to subpart G of the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP") (40 CFR §§ 300.600 *et seq.*) and Executive Order 12580 (3 C.F.R., 1987 Comp. p. 193, 52 Fed. Reg. 2923 (January 23, 1987) as

1  amended by Executive Order 12777 (56 Fed. Reg. 54757 (October 19, 1991)). The CDFG is a

2  designated Trustee pursuant to Section 1006 (b) (3) of the Oil Pollution Act of 1990 ("OPA"), 33

3  U.S.C. § 2706 and subpart G of the NCP. Additionally, the CDFG has natural resource trustee

4  authority pursuant to Fish and Game Code. §§ 711.7 and 1802, and the Lempert-Keene-Seastrand

5  Oil Spill Prevention and Response Act (Government Code §§ 8670.1 et seq.).

6          C.      After the Spill, the USFWS and the CDFG, as Trustees for Natural Resources,

7  (hereinafter, the "Trustees") and the Settling Defendants entered into a Cooperative Natural

8  Resource Damage Assessment Agreement, pursuant to which the Trustees and the Settling

9  Defendants conducted a number of assessment activities. These activities included gathering and

10 analyzing data and other information that they used to attempt to determine and quantify the

11 resource injuries. They estimated that the Spill oiled approximately 6,200 acres of mudflats, salt

12 marsh, and other habitats, and resulted in approximately 800 days of lost recreation. In a separate

13 analysis, the Trustees determined that the Spill killed approximately 4,000 birds, including 130

14 Marbled Murrelets. The Settling Defendants dispute these numbers and contend that far fewer birds

15 were killed.

16         D.      The United States has, concurrently with lodging of this Consent Decree, filed a

17 Complaint seeking natural resource damages under OPA.

18         E.      The Parties agree, and the Court, by entering this Consent Decree, finds, that this

19 Consent Decree has been negotiated by the Parties in good faith, that it is intended to avoid

20 litigation among the Parties and that it is fair, reasonable, and in the public interest.

21         NOW, THEREFORE, before the taking of any testimony, without the adjudication or

22 admission of any issue of fact or law except as provided in Section III, below, and with the consent

23 of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

24                        **III. JURISDICTION AND VENUE**

25         1.      This Court has jurisdiction over the subject matter of this action pursuant to, *inter*

26 *alia*, 28 U.S.C. §§ 1331, 1345, 1355 & 1367, Sections 1002(a), (b)(1)(A) and (b)(2)(A), 1006, and

27 1017 (b) of OPA, 33 U.S.C. §§ 2702(a), (b)(1)(A) & (b)(2)(A), 2706, 2717(b). Venue is proper in

28 this Court pursuant to 28 U.S.C. §§ 1391(b), (c) and 1395(a), 33 U.S.C. §2717(b), and 16 U.S.C.

§1540(a)(1), because Settling Defendants did business in, and the Spill occurred in, this judicial

district.  The Court has personal jurisdiction over Settling Defendants for this particular action, and

each Party does not contest the Court's jurisdiction and does not contest the propriety of venue in

this judicial district for the purposes of this Decree.

## IV.  APPLICABILITY

2.      The obligations of this Consent Decree apply to and are binding upon the Plaintiffs,

and each of them, and upon Settling Defendants, and each of them, and any of Plaintiffs' and/or

Settling Defendants' successors, assigns, or other entities or persons otherwise bound by law.

## V.  DEFINITIONS

3.      Terms used in this Consent Decree that are defined in OPA or in regulations

promulgated pursuant to OPA shall have the meanings assigned to them in OPA or in such

regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used

in this Consent Decree, the following definitions shall apply:

(a)      "Complaint" shall mean the civil complaint filed in this action by the

Plaintiffs concurrently with the lodging of this Consent Decree.

(b)      "Entry of the Consent Decree" or "Entry" shall occur on the date when this

Decree, after signing by the Judge, is entered in the civil docket under Rule 79(a) of the Federal

Rules of Civil Procedure.

(c)      "Natural Resource" and "Natural Resources" shall mean land, fish, wildlife,

biota, air, water, ground water, drinking water supplies, and other such resources belonging to,

managed by, held in trust by, appertaining to, or otherwise controlled by the United States and/or

the State of California, and shall also mean the services provided by such resources to other

resources or to humans.

(d)      "Natural Resource Trustees" or "Trustees" shall mean those federal and state

agencies or officials designated or authorized pursuant to the U.S. Clean Water Act (Federal Water

Pollution Control Act), 33 U.S.C. §§ 1251, *et seq.* ("CWA"), OPA, and/or applicable state law to

act as Trustees for the Natural Resources belonging to, managed by, controlled by, or appertaining

to the United States or the State of California.  Specifically, as used in this Consent Decree, the Trustees are the USFWS and the CDFG.

       (e).     "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

       (f)     "Removal Costs" and "Damages" shall have the meanings ascribed to them pursuant to Sections 1001(5), 1001(31) and 1002 (b) of OPA, 33 U.S.C. §§ 2701(5), 2701(31) and 2702(b), and Government Code § 8670.56.5 .

       (g)     "Restore" or "Restoration" shall mean any action or combination of actions to restore, rehabilitate, replace or acquire the equivalent of any Natural Resource or its services injured, lost, or destroyed as a result of the Spill.

       (h)     "Section" shall mean a portion of this Decree identified by a roman numeral.

       (i)     "Spill" shall mean the occurrence described in Section II, A, above.

       (j)     "State" shall mean the State of California, acting by and on behalf of the CDFG and the RWQCB.

       (k)     "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## VI.  <u>SETTLEMENT PAYMENTS</u>

    4.     Within thirty (30) days after this Decree has been lodged with this Court, Settling Defendants shall deposit the amount of three million seven hundred sixty thousand, one hundred fifty-nine dollars ($3,760,159) into an account bearing interest on commercially reasonable terms, in a federally-chartered bank (hereinafter, the "Kure Account").   If the Decree is not entered by this Court, and the time for any appeal of that decision has run, or if this Court's denial of Entry is upheld on appeal, the monies placed in the Kure Account, together with accrued interest thereon, shall be returned to Settling Defendants.  If the Decree is entered by this Court, Settling Defendants shall, within fifteen (15) business days of the date of such Entry, cause the sum of three million six hundred fifty-five thousand, one hundred fifty-nine dollars ($3,655,159), plus all accrued interest thereon, to be released and disbursed from the Kure Account in accordance with subsections (a)

1   through (e) below.  The remaining one hundred and five thousand dollars ($105,000), plus accrued

2   interest thereon, shall be disbursed in accordance with subsection (f) below.

3           (a) The sum of two million four hundred sixty-two thousand, sixty-seven dollars

4   ($2,462,067.00), together with all the accrued interest on the total amount of the monies deposited

5   in the Kure Account, shall be paid to DOI, on behalf of the Natural Resource Trustees, for the

6   purposes set forth in Subparagraphs (iii) and (iv) below.  Such payment shall be made by Electronic

7   Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions that the

8   Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California shall

9   provide to Settling Defendants following Entry of this Decree by this Court.  Settling Defendants

10  shall send a transmittal letter, indicating that the EFT has occurred, to the Parties in accordance with

11  Section XII of this Decree ("Notices") and to:

12          Department of the Interior
            Natural Resource Damage Assessment and Restoration Program
13          Attention:  Restoration Fund Manager
            1849 "C" Street, N.W., Mail Stop 4449
14          Washington, D.C. 20240

15  The EFT and transmittal letter shall reflect that the payment is being made to the "Natural

16  Resources Damage Assessment and Restoration Fund, Account No. 14X5198 –KURE OIL SPILL."

17  DOI will assign these funds a special project number to allow the funds to be maintained as a

18  segregated account within the Department of Interior Natural Resource Damage Assessment and

19  Restoration Fund, Account No. 14X5198**** (the "KURE OIL SPILL NRD Account").

20          (i)     DOI shall, in accordance with law, manage and invest funds in the KURE

21          OIL SPILL NRD Account and any return on investments or interest accrued on the

22          Account for use by the Natural Resources Trustees in connection with Restoration of

23          Natural Resources affected by the Spill.  DOI shall not make any charge against the

24          KURE NRD Account for any investment or management services provided.

25          (ii)    DOI shall hold all funds in the KURE OIL SPILL NRD Account, including

26          return on investments or accrued interest, subject to the provisions of this Decree.

27          (iii)   The Natural Resources Trustees commit to the expenditure of the funds set

28          forth in this Subparagraph (a) for the design, implementation, permitting (as

- 7 United States, et al. v. Kure Shipping S.A., et al.                    Consent Decree

necessary), monitoring, and oversight of Restoration projects and for the costs of complying with the requirements of the law to conduct a restoration planning and implementation process. The Natural Resource Trustees plan to use the funds for restoration, enhancement, and protection of sandy beach and marsh habitat, for projects benefiting bird species injured by the Spill, for projects providing human use benefits, and for the oversight of these Restoration projects and the Restoration project benefiting Marbled Murrelets described in Section VII, below (Conservation Easement).

(iv)    The allocation of funds for specific projects will be contained in a Restoration Plan prepared and implemented jointly by the Trustees, for which public notice, opportunity for public input, and consideration of public comment will be provided. The Trustees jointly retain the ultimate authority and responsibility to use the funds in the KURE OIL SPILL NRD Account to Restore Natural Resources in accordance with applicable law, this Consent Decree, and any Memorandum of Understanding (MOU) among them.

(b)    The sum of one hundred forty-five thousand, two hundred eighty-seven dollars ($145,287.00) to DOI, Natural Resource Damage Assessment and Restoration Fund, Account No. 14X5198- KURE NRD Account, for reimbursement of its unpaid Natural Resource Damage Assessment costs through September 30, 2006, associated with the Spill. Payment shall be made by EFT to the U.S. Department of Justice in accordance with instructions that the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California shall provide to Settling Defendants. At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation (which shall reference DOJ case number) to the Parties in accordance with Section XII of this Decree ("Notices").

(c)    The sum of nine hundred forty-seven thousand, eight hundred and five dollars ($947,805.00) to CDFG for reimbursement of its unpaid Response and Natural Resource Damage Assessment costs through October 31, 2006, associated with the Spill. Payment is to be

made by trust check, certified check, or money order payable to the State of California Department

of Fish and Game.  The check or money order shall be sent by certified mail to:

> State of California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn:  Katherine Verrue-Slater, Staff Counsel III
> 1700 "K" Street, Suite 250
> Sacramento, California 95811

The check shall reference the Kure Oil Spill and reflect that it is a payment to the Oil Spill

Response Trust Fund pursuant to Government Code section 8670.47.5.

> (d)    The sum of ninety thousand dollars ($90,000.00) to the CDFG to settle

Settling Defendants' civil liabilities to CDFG, including those for penalties and fines, associated

with or arising out of the Spill.  Payment is to be made by trust check, certified check, or money

order payable to the State of California Department of Fish and Game.  The check or money order

shall be sent by certified mail to:

> State of California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn:  Katherine Verrue-Slater, Staff Counsel III
> 1700 "K" Street, Suite 250
> Sacramento, California 95811

The check shall reference the Kure Oil Spill and reflect that it is a payment to the Fish and Wildlife

Pollution Account.  CDFG shall deposit the money as follows: One half into the Oil Pollution

Administration Subaccount and one half into the Oil Pollution Response and Restoration

Subaccount.

> (e)    The sum of ten thousand dollars ($10,000.00) to the RWQCB to settle

Settling Defendants' civil liabilities to the RWQCB, including those for penalties and fines,

associated with the Spill.  Payment is to be made by trust check, certified check, or money

order payable to the State Water Resources Control Board.  The check or money order shall be sent by

certified mail to:

> North Coast Regional Water Quality Control Board
> ATTN:  Samantha Olson, Staff Counsel
> 5550 Skylane Blvd., Suite A
> Santa Rosa, CA  95403

1  The check shall reference the Kure Oil Spill and reflect that it is a payment to the State Water

2  Pollution Cleanup and Abatement Account.

3          (f)      In accordance with written instructions to be provided by the Natural

4  Resource Trustees, the Settling Defendants shall cause the balance remaining in the Kure Account

5  (one hundred and five thousand dollars ($105,000) plus any accrued interest on one hundred and

6  five thousand dollars ($105,000)) to be released and disbursed for the purposes set forth in

7  Subsection VI.4 (a) and/or Subsection VII.7 of this Decree

8          5.      Within ninety (90) days following the date of Entry, DOI and

9  CDFG may submit invoices and supporting documentation to Settling Defendants for any

10 additional Natural Resource Damage Assessment Costs resulting from the Spill that they have

11 incurred after September 30, 2006, through the date of Entry ("New Costs"). Settling Defendants

12 shall pay all uncontested New Costs within sixty (60) days of the receipt of each invoice and its

13 supporting documentation in accordance with the payment instructions provided in Subparagraphs

14 4(b) and (c).

15          (a)      Settling Defendants may contest payment of any New Costs if they determine

16 that DOI or CDFG has made an accounting error or if they allege that a cost item that is included

17 represents a cost that is not a Natural Resource Damage Assessment Cost. Such objection shall be

18 made in writing within sixty (60) days of receipt of the invoice and must be sent to DOI (if DOI's

19 New Costs are being disputed) or to CDFG (if CDFG's New Costs are being disputed) pursuant to

20 Section XI (NOTICES). Any such objection shall specifically identify the contested New Costs and

21 the basis for the objection.

22          (b)      If Settling Defendants object to any New Costs, such objection shall be, in

23 the first instance, the subject of informal negotiations between DOI or CDFG and Settling

24 Defendants. Such period of informal negotiations shall not extend beyond twenty (20) days after

25 the date that written notice of an objection to New Costs is sent to either DOI or CDFG, unless

26 otherwise agreed to in writing by the Parties. If informal negotiations do not result in resolution of

27 the objection, the Settling Defendants shall pay the New Costs that were subject to the objection

28 within thirty (30) days of the conclusion of the informal negotiations, unless the Settling Defendants

- 10 United States, et al. v. Kure Shipping S.A., et al.                                    Consent Decree

1 exercise their right to petition the Court in accordance with this Paragraph. The Settling Defendants

2 may petition the Court within thirty (30) days of the end of the informal negotiation period for

3 resolution of the objection. Further briefing and argument on the petition will comply with the

4 requirements of the Court.

5 ## VII. CONSERVATION EASEMENT AND ENDOWMENT

6       6.      Within thirty (30) days after this Decree has been lodged with this Court, Settling

7 Defendants shall open an escrow to complete the purchase, from the property owners, of a

8 conservation easement in the form of the Deed of Conservation Easement attached as Appendix A

9 to this Decree, over those certain parcels of land described therein, consisting of approximately 298

10 acres and commonly known as the "Big Mynot/E.F. Hunter Complex" (hereinafter, the

11 "Easement"). The Easement shall be held by Save-the-Redwoods League ("SRL"), an organization

12 incorporated in accordance with Internal Revenue Code § 501(c)(3), 26 U.S.C. § 501(c)(3).

13       (a)     Concurrent with the opening of the escrow to complete the purchase of the Easement,

14 the Settling Defendants shall provide a certification to the Trustees that sufficient funds have been

15 placed into escrow to complete the purchase of the Easement and all that remains to be done is

16 execution of the Deed of Conservation Easement by Grantor and Grantee and recordation of the

17 Deed of Conservation Easement.

18       (b)     The Settling Defendants shall complete the purchase of the Easement no later than

19 March 15, 2008, or within 15 days of Entry, whichever is later, and only after a determination by

20 the Plaintiffs (who may first be permitted an opportunity to inspect the parcels) that the condition of

21 the Big Mynot/E.F. Hunter Complex has not been materially altered since June 2005. If the Big

22 Mynot/E.F. Hunter Complex has been materially altered in a manner that diminishes its value as

23 Marbled Murrelet habitat and, as a consequence, acquisition of the Easement no longer constitutes

24 adequate compensation for the injury to this species, the Parties shall then attempt to agree on

25 alternate compensation. If the Big Mynot/E.F. Hunter Complex has not been materially altered, the

26 purchase of the Easement shall be completed. In general, the purpose of the Easement is to ensure

27 that no activities may occur in the Big Mynot/E.F. Hunter Complex that are inconsistent with the

28 best interests of the Marbled Murrelet (as determined by USFWS and CDFG). The Easement shall

run with the land and burden the parcels in perpetuity for that purpose.  The Easement shall name the USFWS and CDFG, or their designees, as intended "holders" of third-party rights to enforce their terms, as Trustees for the injured natural resource benefited by the Easement.  Upon the execution of the Deed of Conservation Easement, Settling Defendants shall cause it to be duly recorded in the County Recorder's Office of Del Norte County and shall provide file-stamped copies to the Trustees.

7.     Within thirty (30) days of Entry of this Decree, Settling Defendants shall pay the sum of three hundred fifty-two thousand, nine hundred thirty-three dollars ($352,933.00) to SRL for deposit into the Big Mynot/E.F. Hunter Fund Account and/or SRL's pooled easement enforcement account, to be allocated and managed in accordance with the *Memorandum of Understanding between the U.S. Fish and Wildlife Service and the California Department of Fish and Game and Save-the-Redwoods League Regarding Management of Conservation Easements for the Big Mynot/E.F. Hunter Complex* (SRL-Trustee MOU), which will be executed in the form attached hereto as Appendix B.  At the time of payment, Settling Defendants shall simultaneously send written notice of payment and a copy of any transmittal documentation (which shall reference DOJ case number 90-5-1-1-4529) to the Parties in accordance with Section XII of this Decree ("Notices").

The Big Mynot/E.F. Hunter Fund Account shall contain two separate subaccounts, the CE Administration Fund and the Murrelet Monitoring Fund (each a "Fund Account"), to be held by SRL.  The CE Administration Fund is to be used exclusively to reimburse SRL for costs incurred to monitor compliance with, and enforce, the terms of the Easement established in accordance with this Decree, provided that up to $35,000 may also be used to prepare a forest restoration plan for the Big Mynot/E.F. Hunter Complex.  Any additional funds placed into the CE Administration Fund pursuant to Subsection VI. 4.(f) of this Decree may also be used to implement the forest restoration plan for the Big Mynot/E.F. Hunter Complex.  The Murrelet Monitoring Fund is to be used exclusively to reimburse SRL for costs incurred to monitor the presence or absence of Marbled Murrelets in the Big Mynot/E.F. Hunter Complex.

## VIII.  STIPULATED PENALTIES

8.      If Settling Defendants fail to cause any payment to be made when due as required by Sections VI and VII, above, or to cause the conveyance of the Easement or payment of money to SRL for deposit into the Big Mynot/E.F. Hunter Fund Account, as required by Section VII, above, Settling Defendants shall pay to the United States and to the State, respectively, a stipulated penalty of $1,000 per day each, for each day that any such payment is late, that the Easement is not purchased, or that the payment to SRL for deposit into the Big Mynot/E.F. Hunter Fund Account is late.

9.      Any stipulated penalties, as described above, owing to the United States shall be paid by EFT in accordance with instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California, or by certified or cashier's check in the amount due, payable to the "U.S. Department of Justice," referencing DOJ No. 90-5-1-1- 4529, and delivered to the office of the United States Attorney, Financial Litigation Unit, Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102.  Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that any such payment is for late payment of amount(s) due under this Decree and shall reference DOJ No. 90-5-1-1-4529 and the case name and number.

10.      Any stipulated penalties, as described above, owing to the State shall be paid by trust check, certified check, or money order payable to the California Department of Fish and Game.  Payment of stipulated penalties shall be accompanied by transmittal correspondence stating that any such payment is for late payment of amount(s) due under this Decree and shall include the identifying information set forth in Paragraph 4(f), above.  The check or money order shall be sent by certified mail to:

> State of California Department of Fish and Game
> Office of Spill Prevention and Response
> Attn:  Katherine Verrue-Slater, Staff Counsel III
> 1700 "K" Street, Suite 250
> Sacramento, California 95811

11.      Settling Defendants shall not deduct any stipulated penalties paid under this Section in calculating their federal or state income taxes.

1    12.    If Settling Defendants fail to pay stipulated penalties according to the terms of this

2   Decree, Settling Defendants shall be liable for interest on such penalties, as provided for in 28

3   U.S.C. § 1961, accruing as of the date payment became due.

4                     **IX.  EFFECT OF SETTLEMENT**

5    13.    Effective upon Settling Defendants' performance of their payment obligations as set

6   forth in Section VI of this Decree and upon their full and satisfactory completion of their other

7   obligations as set forth in Section VII of this Decree, this Decree shall resolve any and all civil

8   claims of Plaintiffs, and any of them, for removal costs, response costs, and for damages for injury

9   to, destruction of, loss of, or loss of use of Natural Resources arising from the Spill, including

10  natural resource damage assessment and restoration monitoring costs associated with the Spill, as

11  provided for by Section 1002(b) of OPA, 33 U.S.C. §2702(b), Government Code § 8670.56.5, Fish

12  and Game Code §§ 12015, 12016, 2014, and Harbors and Navigation Code §151.  In addition, this

13  Decree shall resolve Settling Defendants' liability for civil penalties under the Fish and Game Code

14  arising from the violation of Fish and Game Code § 5650 and civil penalties under Government

15  Code § 8670.66 and Water Code §§ 13350 and 13385.

16    14.    Subject to the provisions of the immediately following Paragraph of this Decree,

17  Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of

18  action of any nature against the United States or the State under federal, state, or local law, arising

19  out of or relating to this Consent Decree or to the Spill.

20    15.    The Settling Defendants expressly reserve their right to file a claim pursuant to

21  Sections 1008 and 1013 of OPA, 33 U.S.C. §§ 2708 and 2713, to recover sums claimed to have

22  been paid by Settling Defendants arising from or connected with the Spill, said claim based upon

23  the grounds that Settling Defendants are entitled to limit their liability pursuant to Section 1004(a)

24  of OPA, 33 U.S.C. § 2704(a).

25    16.    The United States disputes any and all claims and rights, if any, of the Settling

26  Defendants, or any other persons or entities, to recover from the United States and/or the Oil Spill

27  Liability Trust Fund any sums paid by any of the Settling Defendants, or any other persons or

28  entities acting on their behalf, arising from or connected with the Spill upon any grounds or bases,

1  including, but not limited to, the grounds reserved and retained by the Settling Defendants as set

2  forth in the immediately preceding Paragraph concerning the Settling Defendants' claims that they

3  are entitled to limit their liability pursuant to OPA, 33 U.S.C. § 2704(a).  The United States'

4  signature on this Decree and its willingness to have this Decree entered by the Court is not an

5  admission by the United States of such disputed claims and rights and, to the contrary, the United

6  States expressly reserves any and all claims, rights, and defenses to such claims that have been or

7  may in the future be asserted by the Settling Defendants.  Without limiting the foregoing, the said

8  claims, rights, and defenses expressly reserved by the United States include, but are not limited to,

9  claims, rights and defenses arising from, or related to, the litigation captioned *Kure Shipping S.A.*

10  *and Patt Manfield & Co., Ltd., v. Louisiana-Pacific Corporation and Louisiana-Pacific Samoa,*

11  *Inc.*, No. C 98-0648 PJH (N.D. Ca. 2001), *affirmed*, No. 01-17131, 2003 WOL 68124 (9th Cir.,

12  January 8, 2003), said reserved claims, rights, and defenses including the claim preclusive effect of

13  the judgment and appeal in the said captioned litigation.

14      17.    This Decree does not limit or affect the rights of Settling Defendants or of the

15  Plaintiffs against any third parties, not party to this Decree, nor does it limit the rights of third

16  parties, not party to this Decree, against Settling Defendants, except as otherwise provided by law.

17      18.    This Decree shall not be construed to create rights in, or grant any cause of action to,

18  any third party not party to this Decree.

### X.  COSTS

19

20      19.    Plaintiffs shall be entitled to collect the costs (including reasonable attorneys' fees)

21  incurred  in any action necessary to collect any portion of the amounts due under Sections VI, VII,

22  or any stipulated penalties due but not paid under Section VIII, above.

### XI.  NOTICES

23

24      20.    Unless otherwise specified herein, whenever notifications, submissions, or

25  communications are required by this Consent Decree, they shall be made in writing and addressed

26  as follows:

27  To the United States:

28  Chief, Environmental Enforcement Section

- 15 United States, et al. v. Kure Shipping S.A., et al.                                    Consent Decree

1  Environment and Natural Resources Division
   U.S. Department of Justice
2  Box 7611 Ben Franklin Station
   Washington, DC 20044-7611
3  Re: DOJ No. 90-5-1-1-4529

4  Ann C. Hurley
   Environmental Enforcement Section
5  Environment and Natural Resources Division
   U.S. Department of Justice
6  301 Howard Street, Suite 1050
   San Francisco, California 94105

7
   Jeffrey S. Bucholtz
8  Acting Assistant Attorney General
   R. Michael Underhill
9  Attorney in Charge, West Coast Office
   Torts Branch, Civil Division
10 U.S. Department of Justice
   7th Floor Federal Bldg., Room 7-5395
11 P.O. Box 36028
   450 Golden Gate Avenue
12 San Francisco, California 94102-3463

13 To DOI:

14 Charles McKinley
   Assistant Field Solicitor
15 1111 Jackson Street
   Suite 735
16 Oakland, California 94607

17

18 To the State:

19 Anita Ruud
   Deputy Attorney General
20 455 Golden Gate Avenue, Suite 11000
   San Francisco, California 94102-3664

21 To CDFG:

22 Katherine Verrue-Slater
   Staff Counsel III
23 Stephen Sawyer
   Assistant Chief Counsel
24 Department of Fish and Game
   Office of Spill Prevention and Response
25 1700 "K" Street, Suite 250
   Sacramento, California 95811
26

27 To Settling Defendants:

28 Joseph A. Walsh II
   Herbert H. Ray, Jr.
   - 16 United States, et al. v. Kure Shipping S.A., et al.                    Consent Decree

Keesal, Young & Logan, PC
400 Oceangate
Long Beach, California 90801

21.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

22.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Decree or by mutual agreement of the Parties in writing.

## XII.   EFFECTIVE DATE

23.     The Effective Date of this Decree shall be the date of the Entry of this Decree by the Court.

## XIII.  RETENTION OF JURISDICTION

24.     The Court shall retain jurisdiction over this case until termination of this Decree, for the purpose of effectuating or enforcing compliance with the terms of this Decree.

## XIV.  MODIFICATION

25.     The terms of this Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to any term of this Decree, it shall be effective only upon approval by the Court.

## XV.  TERMINATION

26.     . This Decree shall be terminated when the Plaintiffs determine that Settling Defendants have satisfactorily completed performance of their obligations required by this Decree, including payment of the amounts required under Sections VI and VII, and any outstanding stipulated penalties under Section VIII and performance of all obligations under Section VII.  Upon such termination, the Parties shall file with the Court an appropriate stipulation reciting that the requirements of the Decree have been met.

## XVI.  PUBLIC PARTICIPATION

27.     This Decree shall be lodged with this Court for a period of not less than thirty (30) days to allow the opportunity for public notice and comment.  The Plaintiffs reserve the right to withdraw from or withhold their consent to this Decree if the comments from the public regarding

- 17 United States, et al. v. Kure Shipping S.A., et al.                    Consent Decree

the Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate. Settling Defendants consent to Entry of this Decree without further notice.

## XVII. SIGNATORIES/ SERVICE

28.     Each undersigned representative of Settling Defendants, the CDFG and the RWQCB, together with the Assistant Attorneys General for the Civil and the Environment and Natural Resources Divisions of the Department of Justice, certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party or Parties he or she represents to this document.

29.     This Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

30.     Settling Defendants agree not to oppose the Entry of this Decree by the Court or to challenge any provision of the Decree, unless the consent of Plaintiffs, or any of them, has been withdrawn or withheld under the circumstances set forth in Paragraph 27 above, or Plaintiffs, or any of them have notified Settling Defendants in writing that such Plaintiff no longer supports or agrees to the Entry of this Decree.

31.     With regard to matters relating to this Consent Decree and its enforcement and the filing of the Complaint, each Settling Defendant shall identify on the attached signature page the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that entity with respect to all maters arising under or relating to this Consent Decree and the filing of the Complaint. Settling Defendants hereby agree to accept service of process by mail and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and in any applicable local rules of this court, including, but not limited to, service of a summons.

## XVIII. INTEGRATION

32.     This Decree, together with its Appendices and documents incorporated therein, constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than the

Appendices, which are attached to and incorporated into this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XIX.  FINAL JUDGMENT

33.     Upon approval and Entry of this Decree by the Court, this Decree shall constitute a final judgment of the Court, in accordance with Rules 54 and 58 of the Federal Rules of Civil Procedure, as among the Parties.

## XX.  APPENDICES

34.     The following appendices are attached to and incorporated into this Decree:

"Appendix A" is the form of the Deed of Conservation Easement; and

"Appendix B" is the form of the SRL-Trustee MOU.

SO ORDERED.

Dated and entered this _7_ day of __ May _____ , __2008_____.


United States District Judge

1  We hereby consent to the Entry of the foregoing Consent Decree, subject to the Notice and

2  Comment provisions of Section XVI of this Decree:

3  FOR THE UNITED STATES:

4

5

6  DATED: _3/4/08_                      _[signature]_

7                                       RONALD J. TENPAS
                                        Assistant Attorney General
8                                       Environment and Natural Resources Division
                                        United States Department of Justice
9

10

11 DATED: _3/7/08_                      _[signature]_

12                                      ANN C. HURLEY
                                        Trial Attorney
13                                      Environmental Enforcement Section
                                        United States Department of Justice
14

15                                      JEFFREY S. BUCHOLTZ
                                        Acting Assistant Attorney General
16                                      Civil Division

17

18 DATED: _____               _____

19                                      R. MICHAEL UNDERHILL
                                        Attorney in Charge
20                                      West Coast Office
                                        Torts Branch, Civil Division
21                                      United States Department of Justice

22

23

24

25

26

27

28

- 20 United States, et al. v. Kure Shipping S.A., et al.                    Consent Decree

1   We hereby consent to the Entry of the foregoing Consent Decree, subject to the Notice and

2   Comment provisions of Section XVI of this Decree:

3   FOR THE UNITED STATES:

4

5

6   DATED: _____

                                           _____

7                                              RONALD J. TENPAS
                                               Acting Assistant Attorney General

8                                              Environment and Natural Resources Division
                                               United States Department of Justice

9

10

11  DATED: _____

                                           _____

12                                             ANN C. HURLEY
                                               Trial Attorney

13                                             Environmental Enforcement Section
                                               United States Department of Justice

14

15                                             JEFFREY S. BUCHOLTZ
                                               Acting Assistant Attorney General

16                                             Civil Division

17

18  DATED: 12/3/07   _____

19                                             R. MICHAEL UNDERHILL
                                               Attorney in Charge

20                                             West Coast Office
                                               Torts Branch, Civil Division

21                                             United States Department of Justice

22

23

24

25

26

27

28

- 20 United States, et al. v. Kure Shipping S.A., et al.                          Consent Decree

1  We hereby consent to the Entry of the foregoing Consent Decree, subject to the Notice and
   Comment provisions of Section XVI of this Decree:

2

3  FOR THE STATE OF CALIFORNIA DEPARTMENT OF FISH AND GAME:

4

5  DATED: *12·6·07*                    _____
                                        LISA CURTIS
6                                       Administrator
7                                       Office of Spill Prevention and Response
                                        California Department of Fish and Game
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 21 United States, et al. v. Kure Shipping S.A., et al.                    Consent Decree

We hereby consent to the Entry of the foregoing Consent Decree, subject to the Notice and Comment provisions of Section XVI of this Decree:

DATED: *12-4-07*

ROBERT R. KLAMT
Interim Executive Officer
California Regional Water Quality Board
North Coast Region

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

THIS PAGE INTENTIONALLY LEFT BLANK

1
2    We hereby consent to Entry of the foregoing Consent Decree:

3
4    FOR SETTLING DEFENDANTS:

5
6    DATED: 21 Jan., 2008

                                    CHEUNG KWAN
7                                   Director, KURE Shipping S.A.

8
9    DATED: Jan 21, 2008

10                                  MAN TAK YUNG
                                    Director, Patt Manfield Co. Ltd.

11

12

13

14

15

16

17            Agent for service of Process:

18            Joseph A. Walsh, II
19            Keesal, Young & Logan, PC
              400 Oceangate
20            Long Beach, CA  90801

21

22

23

24

25

26

27

28

- 24 United States, et al. v. Kure Shipping S.A., et al.                    Consent Decree

APPENDIX A

Appendix A – FINAL FORM

**RECORDING REQUESTED BY:**

Save-the-Redwoods League

**When Recorded Mail Document:**

Save-the-Redwoods League
114 Sansome Street, Suite 1200
San Francisco, CA 94104

APN: 127-080-02 (ptn)
     127-080-04 (ptn)
     127-080-03 (ptn)
     127-080-01(two ptns)
     127-150-06 (ptn)

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF CONSERVATION EASEMENT

THIS DEED OF CONSERVATION EASEMENT (this "Deed") is made effective this *[\_\_\_\_ day of _____, 200\_]*, by GREEN DIAMOND RESOURCE COMPANY, formerly known as Simpson Resource Company, a Washington corporation, Grantor, in favor of SAVE-THE-REDWOODS LEAGUE, a California nonprofit corporation, as Grantee:

WHEREAS, Grantor is the sole owner in fee simple of certain real property in Del Norte County, California, more particularly described in Exhibit A attached hereto and incorporated herein (hereinafter called collectively the "Parent Parcels"); and

WHEREAS, the Parent Parcels are zoned for timber production and managed by Grantor for the production and harvesting of timber; and

WHEREAS, portions of the Parent Parcels possess fish and wildlife, open space and other natural values of importance to Grantor, Grantee and the people of Del Norte County, the State of California and the United States (the "Conservation Values"), and, as more particularly described below in these Recitals, contain old-growth redwood stands and associated ecosystem traits, including habitat for fish, wildlife and plant species that are listed as "threatened" or "endangered" under the federal and California Endangered Species Acts ("ESA" and "CESA," respectively); and

WHEREAS, the portions of the Parent Parcels warranting preservation and enhancement are described in Exhibit B attached hereto and shown in detail on Exhibit C attached hereto (herein called the "Property"); and

WHEREAS, the Property contains stands composed of old growth redwood trees and other old growth conifer species, various young growth conifer species, and hardwood species (the "Core Reserve Areas") that are adjacent to young forest plantation and regenerating young

riparian forests (the "Buffer Areas"), which Core Reserve Areas and Buffer Areas are depicted on Exhibit C attached hereto. The Property is habitat to numerous wildlife species and could serve as habitat to species listed as threatened or endangered under the ESA and CESA. The Property with riparian areas provides habitat elements for a variety of aquatic and riparian species, including canopy cover for species that require cool water and large woody debris, for species that require cover; and

WHEREAS, this Deed is a term of the settlement of litigation (the "Kure Settlement") brought by the United States and the State of California, on behalf of the U.S. Fish and Wildlife Service ("USFWS") and the California Department of Fish and Game ("CDFG"; USFWS and CDFG are referred to herein, collectively, as the "Trustees"), to recover natural resource damages for injuries to Marbled Murrelets, a species listed under the ESA and CESA, arising from an oil spill in Humboldt Bay on November 5,1997; and

WHEREAS, parts of the Property are breeding habitat for Marbled Murrelets, and the value of protecting and enhancing breeding habitat for Marbled Murrelets is acknowledged to be one of the primary Conservation Values; and

WHEREAS, a Baseline Report dated _____, 200__ and signed by Grantor and Grantee (the "Baseline Report") containing information on property improvements and Conservation Values of the Core Reserve Areas and the Buffer Areas as of the date of this Deed has been prepared and will be maintained on file at the offices of Grantor and Grantee. The parties agree that the Baseline Report provides an accurate, though not exclusive, representation of the Core Reserve Areas and the Buffer Areas as of the date of this Deed; and

WHEREAS, Grantor intends that the Conservation Values of the Property be preserved and maintained in perpetuity; and

WHEREAS, Grantee is a tax-exempt nonprofit organization qualified under Section 501(c)(3) of the Internal Revenue Code and qualified to do business in California which has as its primary purpose the preservation, protection or enhancement of land in its natural, scenic, historical, agricultural, forested or open-space condition or use; and

WHEREAS, Grantor herein conveys to Grantee the right, upon and subject to the terms and conditions of this Deed, to preserve the Conservation Values of the Property in perpetuity; and

WHEREAS, Grantee agrees by accepting this grant to honor the intentions of Grantor stated herein to preserve in perpetuity the Conservation Values of the Property for the benefit of this generation and the generations to come;

NOW, THEREFORE, in consideration of the above Recitals and the mutual covenants, terms, conditions, and restrictions contained herein, and for $10.00 and other good and valuable consideration, receipt of which is hereby acknowledged, and pursuant to the laws of the State of California, Grantor hereby voluntarily transfers and conveys to Grantee a conservation easement in perpetuity over the Property, consisting of certain rights in the Property, the nature, character and extent of which are hereinafter set forth (the "Easement"). This Deed is a conveyance of an

interest in real property under the provisions of California Civil Code Section 815.2(a) subject to the mutual covenants, terms and restrictions set forth in this Deed.

1.     **Purpose.**

The purpose of the Easement is to assure that the Property will be retained predominantly in its natural condition and forever managed primarily for its habitat, ecosystem and other natural values (including its value as potential breeding habitat for Marbled Murrelets), and to prevent any use of the Property (subject to the rights of Grantor in paragraphs 3 and 4) that will impair or interfere with the Conservation Values of the Property (the "Purpose"). Grantor intends that the Easement will confine the use of the Property to such activities that are consistent with the Purpose of this Easement. As provided in paragraph 7, the Easement shall not be construed as affording the general public access to the Property.

Grantee acknowledges that the boundaries of the Property have been selected based on agreement between the parties, that the Easement includes all areas and rights needed to preserve the Conservation Values of the Property (except for the access rights across other property owned by Grantor, which are described in paragraph 2(h)). Grantee further acknowledges that Grantor's use of other portions of the Parent Parcels and Grantor's other nearby properties, including areas immediately adjacent to the Property, for lawful industrial forestry operations or lawful development will not diminish the Conservation Values protected by the Easement, will not be inconsistent with the Purpose of this Easement, and shall be permitted.

2.     **Rights of Grantee.**

To accomplish the Purpose of the Easement, the following rights are hereby conveyed to Grantee, provided that Grantee's use of the Property shall be subject to the terms of paragraph 5:

(a)     A perpetual right and easement in, on, over, and across the Property to preserve the Conservation Values of the Property consistent with the Purpose of the Easement; reserving, however, to Grantor all other rights and privileges that may be used without interfering with or abridging the enumerated rights and easements hereby conveyed and acquired, including the rights and privileges expressly enumerated in paragraph 3. The rights conveyed herein are subject to existing easements for roads and highways, bridges and other crossings, trails, railroads, utilities and pipelines (as specified further below), and to the rights reserved by Grantor under paragraph 3.

(b)     A perpetual right to enter, after reasonable notice to Grantor, upon those portions of the Parent Parcels and other lands owned by Grantor that are specified in a written notice from Grantor under paragraph 8(g) (a "Harvest Area"), for the purpose of inspection and monitoring of compliance with the terms of this Deed, but only that portion of a Harvest Area which is immediately adjacent to the Property.

(c)     A perpetual right to enter the Property to monitor compliance with this Deed and to remove brush, install markers, and take other reasonable actions to delineate the boundaries of the Property to aid the parties in complying with and monitoring

compliance with the terms of this Deed. Any such entry shall be upon prior reasonable notice to Grantor. The reasonableness of the notice shall be judged in light of the specific circumstances, and in an emergency, very short notice may be appropriate. Grantee shall not in any case unreasonably interfere with Grantor's use and quiet enjoyment of the Property, so long as such quiet enjoyment is not a violation of the terms of this Deed.

(d)    For the purpose of accelerating the development of late seral-stage redwood forest conditions, reducing fuel loads, or otherwise improving the health of the natural resources located on the Property, the right to enter the Property and conduct silvicultural prescriptions, brush removal, or other forest health activities, or to monitor the effects of the forest health and restoration activities, or to monitor the Property's Conservation Values. Any such entry shall require prior written notice to Grantor specifying the actions to be taken. In connection with such activities, Grantee shall have the right to establish temporary tailholds (including the use of heavy equipment) on Grantor's adjacent properties. Grantee's right to enter the Property under this paragraph 2(d) shall be limited to entries of a frequency and duration reasonably necessary to fulfill the purposes described in this paragraph 2(d), and the activities which may be carried out pursuant to this paragraph 2(d) in any calendar year shall only be those described in reasonable detail (including a description of the expected frequency, duration and purpose of any entry on the Property) in an annual plan prepared by Grantee prior to the beginning of such year and approved by Grantor, which approval shall not be unreasonably withheld. Grantor's failure to respond to a request for approval of such a plan within twenty (20) days shall be deemed approval.

(e)    A perpetual right to enjoin, through appropriate legal process, (1) any violation of the terms of this Deed by Grantor or its agents, contractors or invitees, and (2) any use of, or activity on, the Property by any person other than Grantor or its agents, contractors or invitees that is not expressly permitted in this Deed and that is detrimental to the Conservation Values, including trespasses by members of the public, and to require the restoration of such areas or features of the Property as may be damaged by uses or activities inconsistent with the provisions of this Deed.

(f)    The right to enter the Property at reasonable times and upon not less than ten (10) days' prior notice in order to conduct scientific research, including but not limited to conducting surveys to determine the presence or absence of Marbled Murrelets.

(g)    The right to enforce, through appropriate legal process, the terms of this Deed.

(h)    Permission to use roads across the Parent Parcels and Grantor's other properties for Grantee to enter the Property for any of the purposes described above will be provided to Grantee pursuant to an Access Agreement in form reasonably satisfactory to Grantor and Grantee to be entered into concurrently with this Deed and to be placed of record with respect to each affected parcel owned by Grantor (the "Access Agreement"). The Access Agreement will grant access over one or

more existing roads (which are shown on Exhibit C attached hereto) or one or more replacement roads (paved or unpaved) between public roads and two access points for the Property, so that to the extent commercially feasible, Grantee will have unimpeded access from public roads to the access points for four-wheel drive vehicles throughout at least six months of the year. Grantor will have the right to abandon, cease to maintain, decommission, relocate, replace, or otherwise change any roads or access points so long as, at any given time, Grantee has road access to two points within one-half mile of the Property and one of the points is within one-half mile of each of the "Big Mynot and E. F. Hunter Stands" (as shown on Exhibit C). In addition, the access from the public roads to the Big Mynot and E. F. Hunter Stands and to the remainder of the Property shall not require significantly greater time or expense to Grantee than access over the existing roads shown on Exhibit C. Whether any substituted access provided by Grantor requires "significantly greater time or expense" than the access existing at the time of this agreement shall be determined by all of the facts and circumstances, but in no event will one hour or less of added driving time constitute "significantly greater time or expense." Nor will replacement access points be deemed to require "significantly greater time or expense" if the terrain between the access point and the Property boundary is walkable by trail or abandoned road for a substantial portion of its length. In addition to the above, Grantee may be allowed access, in the discretion of Grantor, on other roads to the extent they are passable, to the extent set out in the Access Agreement.

(i)     To the extent any HCP is in effect respecting the Property, then Grantee shall be solely responsible for complying with, and remedying any violation of, such HCP arising out of any entry on the Property by Grantee or its agents and any activities of Grantee or its agents, contractors or invitees on the Property (however, Grantor will remain responsible for any ongoing maintenance of roads within the Property that may be required under any HCP).

**3.     Rights Reserved by Grantor.**

All rights and interests not specifically conveyed herein shall remain with Grantor, including the right to engage in all uses of the Parent Parcels not expressly prohibited herein or by law, provided that Grantor's use of the Property shall be subject to the terms of paragraph 5. Without limitation, Grantor expressly reserves the following rights and privileges, all of which are subject to the proviso that they shall be exercised, to the extent practicable, in a manner designed to minimize any impairment of the Conservation Values and avoid any detriment to Marbled Murrelet breeding habitat:

(a)     The right to access the Property, and the right to allow access in, on, over or across the Property to any person.

(b)     The right to deny access in, on, over or across the Property to any person other than Grantee and Grantee's agents, contractors, and invitees who are accessing the Property for purposes contemplated by paragraph 2.

(c)     The right to use, maintain and replace (in the same location, except with the approval of Grantee, which approval shall not be unreasonably withheld) roads, bridges and other crossings, trails, railroad lines and other improvements existing on the Property as of the date of this Deed (including, without limitation, (i) the right to clear (without use of herbicides) roads and areas adjacent to roads within 25 feet of road prisms to permit road use (including the right to fell but not remove trees less than or equal to sixteen inches in diameter measured at 4.5 feet above the ground), and (ii) the right to fell but not remove trees (of any diameter) that pose an imminent safety hazard in connection with road use and maintenance), and (after prior notice to, and approval by, Grantee, which approval will not be unreasonably withheld) to decommission existing roads through the Property. The exercise of any such right under this subparagraph conducted in proximity to Marbled Murrelet breeding habitat shall be conducted in compliance with applicable State and Federal laws and regulations respecting protection of Marbled Murrelets.

(d)     The right to establish temporary tail holds (including use of heavy equipment) in the Buffer Areas, if needed, to anchor cables used in yarding timber from Grantor's adjacent properties.

(e)     The right to suppress wildfire.

(f)     Subject to Section 5(q) below, the right to seek to include the Property in any HCP for the protection of fish or wildlife species or plants, to the extent that such inclusion in an HCP is not inconsistent with the Purpose of the Easement, and the right to perform certain research and monitoring on the Property and to carry out activities contemplated by any HCP. Any such HCP that includes the Property, other than the pending Aquatic Habitat Conservation Plan and Candidate Conservation Agreement with Assurances referenced by the Services in 67 Fed Reg 53567 (Aug. 16, 2002) and as subsequently amended or the Habitat Conservation Plan for the Northern Spotted Owl on the California Timberlands of Simpson Timber Company (1992) as subsequently amended, shall reference this Easement.

(g)     The right to permit hunting on the Property to the extent not prohibited by applicable laws or regulations.

(h)     The right to use all portions of the Parent Parcels not included in the Property for industrial forestry operations or to develop any land adjacent to the Property to the extent authorized by federal, state or local plans, laws or regulations.

## 4.     **Rights of Grantor to Correct Damage Resulting from Disturbances.**

Forest and riverine ecosystems are subject to significant disturbances, the specific timing and locations of which cannot be foreseen. Examples of such disturbances include wildfire, attacks by insects and disease, windthrow, landslides and changes in stream location and channel characteristics. These disturbances have the potential to damage the Conservation Values of the

Property and road and bridge improvements constructed by Grantor. Without limiting any other provisions of this Deed, upon such significant disturbance that damages its transportation network or poses a material threat of mass failures that could affect the Property or the Parent Parcels, Grantor retains the right to take appropriate action with the approval of Grantee, (which approval shall not be unreasonably withheld) to maintain or replace in the same location existing roads and bridges or other crossings within and adjacent to the Property for the purpose for which they were initially established. Upon such significant disturbance, Grantor also retains the right to salvage timber deposited onto the Property from the Parent Parcels as the result of windstorm, landslide or similar event.

### 5. Specific Conservation Easement Limitations and Prohibited Activities.

Any use of, or activity on, the Property that is not expressly permitted in this Deed and that is inconsistent with the Purpose of the Easement, including the rights of Grantee under this Easement, is prohibited, and Grantor and Grantee acknowledge and agree that they will not conduct, engage in or expressly permit any such use or activity, nor any use or activity that is unlawful. Without limiting the generality of this section, the following uses of, or activities on, the Property, though not an exhaustive list, are inconsistent with the Purpose of the Easement and shall be prohibited:

(a)     Timber Harvest. Except as Grantee is specifically authorized by paragraph 2(d), or Grantor is specifically authorized by paragraphs 3(c), 3(e) or 4 (provided that in the case of any trees severed on the Property by Grantor, there shall be no commercial sale of such timber), there shall be no timber harvest on the Property, which includes without limitation, for the purpose of this Deed, any cutting or removal of trees, whether living or dead, standing or downed.

(b)     Subdivision. There shall be no legal or "de facto" division, subdivision, or partitioning of the Property; provided that Grantor may segregate the Property from the Parent Parcel for tax purposes or for purposes of division and sale of the Property as a single unit; and provided further that Grantor shall have the right to sell or otherwise dispose of any whole legal parcel of which a portion is part of the Property so long as Grantor uses commercially reasonably efforts to obtain a lot line adjustment allowing Grantor to sell or dispose of only the portion of such legal parcel that is outside of the Property. If despite such commercially reasonable efforts, Grantor reasonably determines that such a lot line adjustment is unlikely to be approved and effectuated within six (6) months after Grantor commences such efforts, then Grantor shall have the right to sell or dispose of such whole legal parcel even though the result will be a division of the ownership of the Property that is burdened by the Conservation Easement. In such an event, the Easement shall continue to burden any conveyed parcel.

(c)     Construction. Except as specifically authorized in paragraph 3(c), 4, 5(h), or 5(k), there shall be no construction of any buildings, structures or other improvements of any kind on the Property.

(d)  Exploitation of Subsurface Resources. Where Grantor owns the mineral rights in the Property, there shall be no disturbance of the surface of the Property for the exploitation of such mineral rights.

(e)  Waste Disposal. There shall be no disposal or storage of rubbish, garbage, debris, vehicles, equipment, parts thereof, or other unsightly, offensive, or solid or hazardous waste or material on the Property.

(f)  Use of Property. Unless specifically authorized under this Deed, there shall be no industrial, commercial or residential activities on the Property.

(g)  Signs. There shall be no commercial signs, billboards, or other advertising material placed on the Property.

(h)  Utilities. There shall be no installation of new utility systems or extensions of existing utility systems on the Property, including without limitation, new water, sewer, septic tank drainfields, power, fuel and communication lines, pipelines and related facilities, without the express written approval of Grantee (which shall not be unreasonably withheld).

(i)  Fences. There shall be no installation of new fencing on the Property.

(j)  Fertilizers, Herbicides, Pesticides and Agricultural Chemicals. There shall be no direct application of any fertilizers, biocides or other agricultural chemicals on the Property (i.e., application other than due to drift from application on other lands), except as deemed necessary or desirable by Grantee to preserve, protect or enhance the Conservation Values of the Property.

(k)  Alteration of Water Courses. There shall be no draining, filling, dredging, ditching, or diking of wetland areas, alteration or manipulation of ponds and water courses, or creation of new wetlands, water impoundments, or water courses on the Property, except (a) in connection with road maintenance or replacement permitted under paragraph 3(c) provided that a streambed alteration agreement with respect thereto shall have been obtained from CDFG, or (b) as deemed necessary or desirable by Grantee to preserve, protect or enhance the Conservation Values of the Property.

(l)  Water Pollution. There shall be no use or activity on the Property that causes or is likely to cause significant or unlawful pollution of any surface or subsurface waters on the Property.

(m)  Public Access. There shall be no public access in, on, over or across the Property.

(n)  Trails and Off-Road Vehicles. Except with the prior agreement of the parties and in furtherance of the Purpose of this Deed, there shall be no trail construction or reconstruction of existing trails; nor shall there be use of off-road vehicles (including bicycles, motorbikes, or ATVs) on the Property, except on roads.

(o) <u>Disturbances During Marbled Murrelet Breeding Season</u>.  Grantor shall comply with applicable State and Federal laws and regulations respecting protection of Marbled Murrelets.  In proximity to Marbled Murrelet breeding habitat during Marbled Murrelet breeding season (March 24th through September 15th), there shall be no use of mechanical equipment on the Property except in connection with activities permitted under Paragraph 3.  During Marbled Murrelet breeding season, there shall be no discharge of firearms on the Property.

(p) <u>Grazing</u>.  Grantor shall not authorize grazing on the Property.

(q) <u>Habitat Conservation Plans</u>.  The Property may not be included in a Habitat Conservation Plan for the purpose of providing mitigation for impacts to Marbled Murrelets resulting from timber harvest.

**6.    Remedies.**

(a) <u>Notice and Enforcement Action</u>.  If either party determines that the other is in violation of the terms of this Deed or that a violation is threatened, the party (the "notifying party") shall give written notice to the party that is believed to be in violation (the "notified party") of such violation and demand corrective action sufficient to cure the violation and, where the violation involves injury to the Property, resulting from any use or activity inconsistent with the Purpose of the Deed, to restore the portion of the Property so injured to its prior condition.  If the notified party fails to cure the violation within thirty (30) days after receipt of notice thereof from the notifying party, or under circumstances where the violation cannot reasonably be cured within a thirty (30)-day period, fails to begin curing such violation within the thirty (30)-day period, or fails to continue diligently to cure such violation until finally cured, the notifying party may initiate binding arbitration to enforce the terms of this Deed, to enjoin the violation, to recover any damages to which it may be entitled for violation of the terms of this Deed or injury to any Conservation Values of the Property, and to require the restoration of the Property to the condition that existed prior to any such injury, if and to the extent reasonably feasible.  In the event of any dispute as to the rights and obligations of the parties under this Deed, either party may initiate binding arbitration to resolve such dispute.  In the event either party elects to submit a controversy to arbitration, the provisions of paragraph 6(e) shall govern.  Notwithstanding the foregoing, if either party reasonably and in good faith determines that circumstances require immediate action to prevent or mitigate significant damage to the Conservation Values of the Property, that party may pursue its remedies under this paragraph without prior notice or without waiting for the period provided for cure to expire, and in the event the party seeks provisional injunctive relief, may initiate proceedings in a court of competent jurisdiction.  The remedies described in this paragraph shall be cumulative and shall be in addition to all remedies now or hereafter existing at law or in equity.

(b)     <u>Costs of Enforcement</u>.  In the event of any litigation or arbitration to enforce the provisions of this Deed, the prevailing party's costs of suit and attorneys' fees shall be borne by the non-prevailing party in any such litigation or arbitration.

(c)     <u>Discretion</u>.  Enforcement of the terms of this Deed shall be at the discretion of each party, and any forbearance to exercise rights under this Deed in the event of any breach of any term of this Deed shall not be deemed or construed to be a waiver of such term or of any subsequent breach of the same or any other term of this Deed or of any rights under this Deed.  No delay or omission in the exercise of any right or remedy upon any breach shall impair such right or remedy or be construed as a waiver.

(d)     <u>Acts Beyond Parties' Control</u>.  Neither party shall be in default or violation as to any obligation created hereby and no condition precedent or subsequent shall be deemed to fail to occur if such party is prevented from fulfilling such obligation by, or such condition fails to occur due to:

   (i)     Actions by trespassers upon the Property or other persons outside the party's reasonable control;

   (ii)    Forces beyond the party's reasonable control, including without limitation, wind, flood, earthquake, landslide, storm, lightning, fire, epidemic, war, riot, civil disturbance, labor disturbance, sabotage, proceeding by court or public authority, act or failure to act by public authority or trespasser; or

   (iii)   Any reasonable action under emergency conditions to prevent, abate, or mitigate significant injury to the Property or adjoining properties resulting from such causes.

(e)     <u>Arbitration of Disputes</u>.  AT THE ELECTION OF EITHER PARTY TO THIS DEED, ANY CLAIM, CONTROVERSY OR DISPUTE RELATED TO THIS DEED SHALL BE RESOLVED BY ARBITRATION AS PRESCRIBED IN THIS PARAGRAPH.

A SINGLE ARBITRATOR WHO IS A RETIRED FEDERAL OR CALIFORNIA JUDGE SHALL CONDUCT THE ARBITRATION UNDER THE THEN CURRENT COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "AAA").  THE ARBITRATOR SHALL BE SELECTED BY MUTUAL AGREEMENT OF THE PARTIES, OR IF THEY ARE UNABLE TO REACH AGREEMENT ON THE ARBITRATOR WITHIN THIRTY (30) DAYS AFTER WRITTEN NOTICE BY ONE PARTY TO THE OTHER(S) INVOKING THIS ARBITRATION PROVISION, IN ACCORDANCE WITH AAA PROCEDURES FROM A LIST OF RETIRED FEDERAL OR CALIFORNIA JUDGES MAINTAINED BY THE AAA FOR USE IN CALIFORNIA.  THE ARBITRATION SHALL BE CONDUCTED IN CRESCENT CITY, CALIFORNIA AND ALL EXPEDITED

PROCEDURES PRESCRIBED BY THE AAA COMMERCIAL ARBITRATION RULES SHALL APPLY.

THE ARBITRATOR SHALL LIMIT THE SCOPE OF DISCOVERY TO MATTERS RELEVANT TO THE ISSUES IN QUESTION AND SHALL ESTABLISH REASONABLE TIME LIMITS WITHIN WHICH THE PARTIES TO THE ARBITRATION MUST COMMENCE AND COMPLETE DISCOVERY. THE ARBITRATOR SHALL HAVE AUTHORITY ONLY TO GRANT SPECIFIC PERFORMANCE AND TO ORDER OTHER EQUITABLE RELIEF AND TO AWARD COMPENSATORY DAMAGES, BUT SHALL NOT HAVE THE AUTHORITY TO AWARD PUNITIVE DAMAGES OR OTHER NONCOMPENSATORY DAMAGES. THE ARBITRATOR SHALL AWARD TO THE PREVAILING PARTY ITS REASONABLE ATTORNEYS' FEES AND COSTS AND OTHER EXPENSES INCURRED IN THE ARBITRATION, EXCEPT THE PARTIES SHALL SHARE EQUALLY THE FEES AND EXPENSES OF THE ARBITRATOR. THE ARBITRATOR'S DECISION AND AWARD SHALL BE FINAL AND BINDING AND JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

IF ANY PARTY FILES A JUDICIAL OR ADMINISTRATIVE ACTION ASSERTING CLAIMS SUBJECT TO ARBITRATION AS PRESCRIBED HEREIN, AND ANOTHER PARTY SUCCESSFULLY OPPOSES SUCH ACTION OR COMPELS ARBITRATION OF SAID CLAIMS, THE PARTY FILING SAID ACTION SHALL PAY THE OTHER PARTY'S COSTS AND EXPENSES INCURRED IN OPPOSING SUCH ACTION OR COMPELLING ARBITRATION, INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES.

NOTICE: BY INITIALLING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED ABOVE AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALLING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

Grantor Initials: _____    Grantee Initials: _____

### 7. Access.

No right of access by the general public to, on, across or in any portion of the Property, the Parent Parcels or Grantor's other properties is conveyed by this Deed; nor shall either party authorize such access to the general public to, on, across or in any portion of the Property or the Parent Parcels. The term general public does not include employees and agents of the USFWS and the CDFG who, in the performance of their responsibilities, or exercise of their rights, as natural resource trustees related to the Kure Settlement and this Easement, shall have rights of access, after reasonable notice to Grantor, to monitor Marbled Murrelet and/or their breeding habitat, and to exercise their rights as third party beneficiaries pursuant to this Deed.

### 8. Responsibilities of Parties.

(a) Costs. As between Grantor and Grantee, Grantor shall be responsible for all landowner costs relating to fire protection consistent with Grantor's historic practice and in accordance with all applicable requirements of law and of contractual agreements entered into by Grantor. Both parties shall keep the Property free of any liens arising out of any work performed for, materials furnished to, or obligations incurred by that party.

(b) Taxes. Grantor shall pay before delinquent all taxes, assessments, fees, and charges of whatever description levied on or assessed against the Property by a competent authority, and shall furnish Grantee with satisfactory evidence of payment upon request. Notwithstanding the foregoing, Grantee shall pay any tax, fee or assessment that may apply to transfer of the Deed by Grantee to another party.

(c) Compliance with Laws. Grantee and Grantor shall at all times in connection with their respective activities under this Deed act in compliance with all applicable laws and regulations including environmental laws ("Applicable Laws"). Notwithstanding any other provision in this Deed, nothing in the Deed will require either party to commit any act, or to make any omission, that would violate any Endangered Species Act permit or HCP that has been approved (at the time of the action) by the applicable agency.

(d) Forest Management. Grantee shall not object to Grantor's right to engage in forest management and silvicultural practices on the Parent Parcels but outside the Property, including but not limited to growing, harvesting and replanting trees; pest management; silvicultural prescriptions and brush clearing; road building, maintenance, repair and decommissioning; and other land maintenance and management activities; provided that such practices are consistent with industry standards and with applicable State and Federal laws and regulations. Grantee acknowledges that, unless required by law, Grantor will not be required to leave or maintain a buffer strip of trees adjacent to the Property to minimize impairment of the Conservation Values of the Property. Grantor shall have no right or

obligation to undertake any forest management and silvicultural activities on the Property. Pursuant to paragraph 2(d), Grantee has the right but not the obligation to undertake certain forest management activities on the Property.

(e)     Prevention of Unauthorized Access.  Grantee shall cooperate with Grantor (at Grantor's expense) to prevent unauthorized use of, or access across or through, the Parent Parcels or the Property.

(f)     Suppression of Wildfires.  Grantee shall not interfere with Grantor's efforts to suppress wildfires. Grantor shall use reasonable efforts, under the circumstances, to give Grantee prompt notice of any wildfire Grantor believes will affect the Property, but Grantor shall not be liable for any consequences of its failure to provide such notice.

(g)     Notification Regarding Timber Operations.  At the time of filing an application for timber harvesting plans on portions of Grantor's lands that are contiguous to the Property, Grantor shall provide to Grantee the landowner's Notice of Intent to Harvest Timber. Upon request, Grantor shall provide Grantee information on the locations where, during the previous calendar year, it harvested timber on lands owned by Grantor contiguous to the Property, or constructed/reconstructed roads within or against the boundaries of the Property.

**9.     Representations and Warranties.**

Grantor represents and warrants that, to Grantor's actual knowledge as of the date of this Deed:

(a)     Grantor is in compliance in all material respects with all federal, state, and local laws, regulations and requirements, applicable to the Property and its use, including without limitation all federal, state, and local environmental laws, regulations and requirements;

(b)     There has been no release, dumping, burying, abandonment or migration from off-site onto the Property of any substances, materials, or wastes that are subject to regulation as hazardous, toxic, dangerous, or harmful by any federal, state or local law, regulation, statute or ordinance, except that Grantor has applied herbicides and pesticides in compliance with law;

(c)     There is no pending or threatened litigation affecting the Property or any portion of the Property that will materially impair the Conservation Values of the Property, or that would impair Grantor's title to the Property;

(d)     No civil or criminal proceedings have been instigated or are pending against Grantor by government agencies or third parties arising out of alleged violations of environmental laws on or with respect to the Property;

(e)     Grantor has not received any notices of violation, penalties, claims, demand letters, or other notifications relating to a breach of environmental laws respecting the Property; and

(f)     There are no outstanding mortgages or voluntary liens on the Property which have not been expressly subordinated to this Deed, and that the Property is not subject to any other conservation easement.

The term "Grantor's actual knowledge" shall mean the actual knowledge, without investigation or inquiry, of any of the following employees of Grantor: Neal Ewald, General Manager, California Timberlands Division; Tharon O'Dell, Timberlands Resource Manager; Robert Miller, Operations Manager; or Daniel Opalach, Timberlands Investment Manager.

**10.     Indemnification and Insurance.**

(a)     Grantor agrees to release and hold harmless, indemnify, and defend Grantee and its employees, agents, contractors, successors, and assigns from and against all liabilities, penalties, costs, losses, damages, expenses, causes of action, claims, demands, or judgments, including, without limitation, reasonable attorneys' fees, arising from or in any way connected with:

(i)     Injury to or the death of any person, or physical damage to any property, resulting from any act, omission, condition, or other matter related to or occurring on or about the Property, to the extent caused by any act or omission of Grantor or its employees, agents or contractors; and

(ii)    Violations or other failure by Grantor to comply with the requirements of any other federal, State or local environmental law or regulation, or to comply with any HCP or other contractual agreement relating to the Property.

(iii)   The unlawful presence or illegal release in, on, from, or about the Property, at any time, of any substance now or hereafter defined, listed, or otherwise classified pursuant to any federal, state, or local law, regulation, or requirement as hazardous, toxic or dangerous to the air, water, or soil, or in any way harmful or threatening to human health or the environment, caused by Grantor; and

(iv)    Any claims arising out of the inaccuracy of any representations and warranties provided in paragraph 9 above or other breach of this Deed by Grantor.

(b)     Grantee agrees to release and hold harmless, indemnify, and defend Grantor and its employees, agents, contractors, successors and assigns from and against all liabilities, penalties, costs, losses, damages, expenses, causes of action, claims, demands, or judgments, including, without limitation, reasonable attorneys' fees, arising from or in any way connected with:

14 of 27

Appendix A – FINAL FORM

(i)     Injury to or the death of any person, or physical damage to any Property, resulting from any act, omission, condition, or other matter related to or occurring on or about the Property, to the extent caused by any act or omission of Grantee or its employees, agents or contractors; and

(ii)    Violations or other failure by Grantee to comply with the requirements of any federal, state or local environmental law or regulation, or to comply with any HCP or other contractual agreement relating to the Property.

(iii)   The unlawful presence or illegal release in, on, from, or about the Property, at any time, of any substance now or hereafter defined, listed, or otherwise classified pursuant to any federal, state, or local law, regulation, or requirement as hazardous, toxic or dangerous to the air, water, or soil, or in any way harmful or threatening to human health or the environment, caused by Grantee.

(iv)    Any claims arising out of any breach of this Deed by Grantee.

(c)     So long as this Deed is in effect, Grantee, at its expense, shall procure and maintain in force insurance, on forms and with companies reasonably satisfactory to Grantor, covering Grantee against risks and with minimum limits as indicated below:

(i)     Workers Compensation (Statutory amount) and Employer's Liability ($1,000,000).

(ii)    Commercial General Liability insurance of $1,000,000 combined single limit for bodily injury and property damage per occurrence.

(iii)   Commercial Automobile Liability insurance with minimum limits of $1,000,000 per occurrence combined single limit for bodily injury and property damage, with coverage extended to all owned, hired, or non-owned vehicles (if any).

The policies specified in clauses (ii) and (iii) above shall include an endorsement which shall name Grantor as an additional insured on a primary basis. The additional insured endorsement must be ISO CG 20 11 01 96 (or other form with like wording). Additional insured status gives the additional insured rights of indemnity under the policies that are independent of the contractual requirement to indemnify. The policies specified in clauses (i), (ii) and (iii) above shall include an endorsement which shall provide that Grantor be given a 30-day written notice prior to cancellation or material change to the policy. All liability coverages must be on an "occurrence" basis as opposed to "claims made." All insurance shall be in a form sufficient to protect Grantee and Grantee's contractors and Grantor against the claims of third persons, and to cover claims by Grantor against Grantee for which the Grantee has assumed liability under this Deed. Prior to any entry upon the Property by Grantee or its contractors and annually thereafter on or about January 1 each year , Grantee shall furnish Grantor

a certificate(s) of insurance, dated and signed by a stated, authorized agent for the insuring company or companies, in a form acceptable to Grantor and containing a representation that coverage of the types listed above is provided with the required limits. In addition, for any contractor that is entering the Property in order to do forestry work permitted hereunder on behalf of Grantor, Grantee shall assure that the contractor has obtained an extension of coverage for its Commercial General Liability insurance to include contractual liability, logger's broad form property damage, products/completed operations, cross liability, and pollution arising out of heat, smoke or fumes from hostile fires. Grantor reserves the right to require a certified copy of the policy(ies) or to examine the actual policy(ies). Notwithstanding the foregoing description of specific insurance coverages and policy limits, (1) Grantee shall procure and maintain in effect insurance policies providing such additional coverages as may be customarily obtained, from time to time, by lessees, licensees or contractors entering on to timberland property of others, and (2) the policy limits set forth above shall be adjusted not less frequently than once every five (5) years to reflect percentage increases, between the date of this Deed and the relevant adjustment date, in the Department of Labor, Bureau of Labor Statistics Consumer Price Index (All Items, All Cities), or a comparable inflation index if such Consumer Price Index is no longer published.

(d)     So long as this Deed is in effect, Grantor shall at all times, at Grantor's option, either (1) maintain a net worth (determined in accordance with generally accepted accounting principles) in excess of fifty million dollars ($50,000,000) and from time to time, upon Grantee's request (not more frequently than once in any calendar year), provide Grantee with certification by its financial officer that Grantor's net worth exceeds fifty million dollars ($50,000,000), or (2) maintain in force Commercial General Liability insurance and Commercial Automobile Liability insurance with liability limits consistent with those required of Grantee under paragraphs 10(c)(i), (ii) and (iii).

(e)     Notwithstanding any other provision in this paragraph 10, Grantor and Grantee each agree that in the event a fire occurs on or spreads to the Property, neither will assert against the other any claim for damages based in whole or in part on the magnitude, nature, or extent of fuel loading on the Property or on the surrounding lands owned by Grantor.

## 11.     Condemnation.

The purposes of this Conservation Easement are presumed to be the best and most necessary public use as defined at Code of Civil Procedure Section 1240.680 notwithstanding Code of Civil Procedure Sections 1240.690 and 1240.700.

However, in the event the easement or the Property is taken, in whole or in part, by exercise of the power of eminent domain, or acquired by purchase in lieu of condemnation,

Appendix A – FINAL FORM

whether by public, corporate, or other authority, so as to terminate the Deed, in whole or in part, Grantor and Grantee shall act jointly to recover the full value of the interest in the Property subject to the taking or in lieu purchase and all direct or incidental damages resulting from the taking or in lieu purchase.  All expenses reasonably incurred by Grantor and Grantee in connection with the taking or in lieu purchase shall be paid out of the amount recovered.  Except as provided by applicable law, Grantor and Grantee agree that Grantor's and Grantee's respective shares of the balance of the amount recovered shall be proportionate with the relative amounts of (a) the appraised value of the timber inventory on the portion of the Property being condemned and, (b) the appraised value of the underlying land being condemned, with Grantee being entitled, subject to the rights of CDFG and the USFWS to recoup amounts as provided in their separate agreement with the Grantee, to the portion of the award allocable to the timber value and Grantor being entitled to the portion allocable to the land value.

## 12.    **Assignment.**

Except as provided in paragraph 15, Grantee's rights under this Deed are transferable only upon written approval of Grantor, which shall not be unreasonably withheld, and only to a tax-exempt nonprofit organization qualified under Section 501(c)(3) of the Internal Revenue Code and qualified to do business in California which has as its primary purpose the preservation, protection, or enhancement of land in its natural, scenic, historical, agricultural, forested, or open-space condition or use.  As a condition of such transfer, Grantee shall require that the transferee assumes in writing the obligations of Grantee under this Deed and exercise its rights under the assignment consistent with the Purpose of the Deed.  Grantee may exercise its rights and perform its obligations under this Deed through Grantee's agents and contractors, provided that Grantee shall at all times be responsible for the actions or omissions of such agents and contractors.

## 13.    **Subsequent Transfers.**

Grantor agrees to incorporate the terms of this Deed in any deed or other legal instrument by which it divests itself of any interest in all or a portion of the Property, including, without limitation, a leasehold interest of over ten (10) years, and to provide Grantee with written notice of the transfer of any interest in all or a portion of the Property (including copies of the recorded transfer documents) no later than twenty (20) days after the date of such transfer.  The failure of Grantor to perform any act required by this paragraph shall not impair the validity of this Deed or limit its enforceability in any way.

Grantor shall not grant any additional easements, rights of way or other interests in the Property (other than a security interest that is subordinate to this Deed), if the proposed grant could reasonably be expected to be inconsistent with the Purposes of this Conservation Easement.  This paragraph shall not prohibit transfer of a fee or leasehold interest in the Property that is subject to this Conservation Easement and complies with paragraph 13.

This Deed and the Easement shall not be subject to extinguishment by the doctrine of merger.

### 14.    **Amendment.**

If circumstances arise under which an amendment to or modification of this Deed would be appropriate, Grantor and Grantee are free to jointly amend this Deed, provided that any material amendment shall require the consent of the CDFG and the USFWS; and provided further that no amendment shall be allowed that will affect the qualification of the Deed or the status of Grantee under any applicable laws, including California Civil Code sections 815-816 or Section 170(h) of the Internal Revenue Code of 1986, as amended (or any successor provision(s) then applicable). Any such amendment shall be in writing as mutually agreed to by both Grantee and Grantor and shall be consistent with the Purpose of the Easement, including the rights of Grantee under this Deed. All amendments shall be recorded in the official records of Del Norte County and any other jurisdiction in which such recording is required.

### 15.    **Third Party Beneficiaries.**

Except as expressly provided below, there shall be no third party beneficiaries of the Easement or this Deed. The CDFG and the USFWS (together, "Trustees") are intended third party beneficiaries of this Deed, in accordance with California Civil Code §§ 1085 and 1559 and common law and, as such, hold the right to enforce its terms in accordance with applicable law and policy; provided, however, that (a) only the Grantee (including any successor Grantee permitted under paragraph 12) shall have the right to enforce the provisions of this Deed unless and until the Trustees give written notice to Grantor that Grantee has been replaced as the enforcing party by one or both of the Trustees, and (b) thereafter only one of the Trustees, or both acting together, as designated in such notice, shall have such enforcement authority, until the Trustees give written notice to Grantor that the Grantee has been reinstated as the enforcing party. It is the intent of the preceding sentence that, at any particular time, only one party (Grantee, or USFWS , or CDFG, or the Trustees acting together), shall have the right to enforce the terms of this Deed against Grantor. In the event that, at any time, both Trustees acting together are the named enforcing party, and Grantor receives inconsistent notices or demands from the two, then Grantor shall have the right to require by written notice that the Trustees resolve such inconsistency and, pending the Trustees' resolution of such inconsistency, Grantor shall be relieved of any obligation to respond to such notices or demands.

The Grantor acknowledges that funds to acquire the Easement have been provided pursuant the terms of a settlement of litigation brought by CDFG and USFWS and that a Notice of an Unrecorded Agreement between them and Save the Redwoods League will be recorded on title to the Property as part of this transaction. The Grantor agrees to execute this Notice if requested by Grantee, USFWS or CDFG. The Grantor acknowledges that the Agreement between USFWS and CDFG and the Grantee provides certain rights to USFWS and CDFG, including the right to require the Grantee to assign or delegate to either of them any of its rights under this Deed, subject to the terms of this paragraph 15.

### 16.    **Compliance Certificates.**

Upon request by Grantor (but not more than once in any calendar year), Grantee shall within sixty (60) days execute and deliver to Grantor any document, including a certificate of

compliance, which certifies Grantor's compliance with any obligation of Grantor contained in this Deed and otherwise evidences the status of the Deed as may be requested by Grantor.

17.    **Notices.**

Any notice, demand, request, consent, approval, or communication that either party desires or is required to give to the other shall be in writing and either served personally or sent by first class mail, postage prepaid, addressed as follows:

**To Grantor:**

[_____]
Green Diamond Resource Company
[_____]
[_____]

**To Grantee:**

[_____
_____
_____
_____]

**To CDFG:**

Department of Fish and Game
Office of Spill Prevention and Response
1700 K Street, Suite 250
Sacramento, California 95814
Attention: Administrator

**With a copy to:**

Department of Fish and Game
Office of the General Counsel
1416 Ninth Street, 12th Floor
Sacramento, California  95814-2090
Attn: General Counsel

**To USFWS:**

Field Supervisor
U.S. Fish and Wildlife Service Arcata Office
1655 Heindon Road
Arcata, CA 95521-5582

**With a copy to:**

Office of the Solicitor
San Francisco Field Office
1111 Jackson St., Suite 735
Oakland, CA 94607

or to such other address as either party from time to time shall designate by written notice to the other.

18.   **Recordation.**

Grantee shall record this Deed in timely fashion in the official records of Del Norte County, California and may re-record it at any time as may be required to preserve its rights in this Deed.

19.   **General Provisions.**

(a)   Controlling Law; Jurisdiction and Venue; Jury Waiver.   The interpretation and performance of this Deed shall be governed by the laws of the State of California. Any action brought with respect to this Deed may, subject to the provisions of paragraphs 6(a) and 6(e), be brought in the Superior Court of the State of California for Del Norte County and the parties hereto consent to the jurisdiction and venue of such court.   Each of the parties hereto waives any right to a jury trial in any action relating to this Deed.

(b)   Liberal Construction.   Any general rule of construction to the contrary notwithstanding, this Deed shall be liberally construed in favor of the grant to effect the Purpose of the Easement.   If any provision in this instrument is found to be ambiguous, an interpretation consistent with the Purpose of the Easement that would render the provision valid shall be favored over any interpretation that would render it invalid.

(c)   Severability.   If any provision of this Deed, or the application thereof to any person or circumstance, is found to be invalid, the remainder of the provisions of this Deed, or the application of such provision to persons or circumstances other than those as to which it is found to be invalid, as the case may be, shall not be affected thereby.

(d)   Entire Agreement.  This Deed sets forth the entire agreement of the parties with respect to the easement.  No alteration or variation of this instrument shall be valid or binding unless contained in an amendment as provided for in this Deed.

(e)   Joint Obligation.  The obligations imposed by this Deed upon Grantor shall be joint and several.

(f)   Successors.  It is the express intent of Grantor and Grantee that the provisions of this Deed shall run with and burden title to the Property in perpetuity, and shall be binding upon and inure to the benefit of the successors and assigns of Grantor and Grantee.

(g)   "Grantor" – "Grantee".  The terms "Grantor" and "Grantee," wherever used herein, and any pronouns used in place thereof, shall be held to mean and to include, respectively, the above-named Grantor, and the successors and assigns of said Grantor, and each of them, and the above-named Grantee, and its successors and permitted assigns.

(h)   Termination of Rights and Obligations.  A party's rights and obligations under this Deed terminate upon transfer of the party's interest in the Deed or Property, except that liability for acts or omissions occurring prior to transfer shall survive transfer.

(i)   Captions.  The captions in this instrument have been inserted solely for convenience of reference and are not a part of this instrument and shall have no effect upon construction or interpretation.

(j)   Counterparts.  The parties may execute this instrument in two (2) or more counterparts, which shall in the aggregate, be signed by both parties; each counterpart shall be deemed an original instrument as against any party who has signed it.  In the event of any disparity between the counterparts produced, the recorded counterpart shall be controlling.

TO HAVE AND TO HOLD unto Grantee, its successors and permitted assigns, forever.

IN WITNESS WHEREOF, Grantor and Grantee have executed this instrument on the date set forth below.

GREEN DIAMOND RESOURCE COMPANY, GRANTOR

By: _____

Its: _____

_____
Date

Appendix A – FINAL FORM

GRANTEE'S ACCEPTANCE:

SAVE-THE-REDWOODS LEAGUE

By: _____        _____
                                                                                            Date
Its: _____

Approved as to form:
General Counsel
State of California
Department of Fish and Game

BY: _____
         Ann S. Malcolm
         General Counsel

Approved as to form:
Office of the Field Solicitor
U. S. Department of the Interior

BY: _____
         Charles C. McKinley
         Assistant Field Solicitor

STATE OF CALIFORNIA    )
                        ) ss:
COUNTY OF _____    )

       I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that he/she signed this instrument, on oath stated that he/she was authorized to execute the instrument and acknowledged it as the _____ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

**Dated:**

```
┌─────────────────────────┐
│                         │
│                         │
│                         │         _____
│                         │         Notary Public
│                         │         Print Name: _____
│                         │         My commission expires: _____
│                         │
└─────────────────────────┘
(Use this space for notarial stamp/seal)
```

STATE OF CALIFORNIA    )
                       ) ss:
COUNTY OF _____   )

    I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that he/she signed this instrument, on oath stated that he/she was authorized to execute the instrument and acknowledged it as the _____ to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

**Dated:**

_____
Notary Public
Print Name: _____
My commission expires: _____

(Use this space for notarial stamp/seal)

24 of 27

**Exhibit A**
**Description of Parent Parcels**

Township 14 North, Range 1 East:

Section 25:
Lots 1, 2, 3, 6, 7, 8, 9, 10, 13, 16.
(Parcels 1A, 2B, 3C, 6F, 7G, 8H, 9I, 10J, 13N, 16P as shown on the plat of resurvey of Township 14 North, Range 1 East, Humboldt Meridian, accepted June 24, 1971)
APN 127-080-01 (Portion of)

Section 26:
Lot 16.
(Parcel 16X as shown on the plat of resurvey of Township 14 North, Range 1 East, Humboldt Meridian, accepted June 24, 1971)
APN 127-080-02 (Portion of)

Section 35:
Northeast quarter;
Portion of the east half of the northwest quarter.
(Parcels A, B, C, H, 1, J, as shown on the plat of resurvey of Township 14 North, Range 1 East, Humboldt Meridian, accepted June 24, 1971)
APN 127-080-04 (Portion of)

Section 36:
Northwest quarter.
(Parcels C, D, E, and F as shown on the plat of resurvey of Township 14 North, Range 1 East, Humboldt Meridian, accepted June 24, 1971)
APN 127-080-03 (Portion of)

Township 14 North, Range 2 East:

Section 30:
Lots 1, 2, 3, 4.
(Parcels 1D, 2E, 3L, 4M, as shown on the plat of resurvey of Township 14 North, Range 2 East, Humboldt Meridian, accepted February 26, 1971)
APN 127-150-06 (Portion of)

END OF DESCRIPTION
Description compiled by:

*Peter Jackson*        11/19/07
Peter Jackson                Date
LS 8153

PROFESSIONAL LAND SURVEYOR
PETER JACKSON
LS 8153
12/31/08
Exp. Date
STATE OF CALIFORNIA

EXHIBIT B

All that real property located in Sections 26, 25, 35 and 36, Township 14 North, Range 1 East, Humboldt Meridian, County of Del Norte, State of California, being more particularly described as follows:

BEGINNING at a point that is South 07 degrees 36 minutes 07 seconds West, 2,118.60 feet from the Section Corner to Sections 26, 25, 35 and 36, Township 14 North, Range 1 East, Humboldt Meridian as shown in the Record of Survey for Green Diamond Resource Company "Big Mynot Creek Conservation Easement Area" recorded in Book 14 of Maps, page 115, Del Norte County Records;

thence North 84 degrees 15 minutes 09 seconds East, 133.79 feet;
thence North 85 degrees 43 minutes 19 seconds East, 61.69 feet;
thence North 70 degrees 57 minutes 38 seconds East, 90.90 feet;
thence North 82 degrees 09 minutes 51 seconds East, 118.38 feet;
thence North 88 degrees 18 minutes 27 seconds East, 56.63 feet;

thence South 89 degrees 59 minutes 43 seconds East, 52.16 feet;
thence North 85 degrees 17 minutes 16 seconds East, 63.55 feet;
thence North 79 degrees 09 minutes 34 seconds East, 68.02 feet;
thence North 80 degrees 12 minutes 50 seconds East, 117.64 feet;
thence North 76 degrees 07 minutes 33 seconds East, 72.52 feet;

thence North 83 degrees 32 minutes 06 seconds East, 126.66 feet;
thence North 78 degrees 32 minutes 50 seconds East, 103.96 feet;
thence North 79 degrees 46 minutes 19 seconds East, 151.52 feet;
thence North 78 degrees 06 minutes 36 seconds East, 82.55 feet;
thence North 77 degrees 40 minutes 32 seconds East, 152.01 feet to a point along the centerline of an existing road;

thence continuing along the centerline of said road North 12 degrees 35 minutes 55 seconds East, 324.28 feet;
thence North 07 degrees 26 minutes 31 seconds West, 83.59 feet;
thence North 32 degrees 37 minutes 24 seconds West, 112.49 feet;
thence North 62 degrees 23 minutes 16 seconds West, 155.91 feet;
thence North 25 degrees 06 minutes 42 seconds West, 188.20 feet;

thence North 33 degrees 12 minutes 53 seconds East, 98.90 feet;
thence North 60 degrees 27 minutes 48 seconds East, 369.09 feet;
thence South 89 degrees 54 minutes 19 seconds East, 310.61 feet;
thence South 74 degrees 33 minutes 14 seconds East, 252.51 feet;
thence North 52 degrees 49 minutes 12 seconds East, 78.44 feet;

thence North 05 degrees 31 minutes 49 seconds East, 92.47 feet;
thence North 24 degrees 46 minutes 34 seconds West, 150.66 feet;
thence North 34 degrees 28 minutes 46 seconds West, 154.44 feet;
thence North 13 degrees 40 minutes 11 seconds West, 105.29 feet;
thence North 34 degrees 00 minutes 32 seconds East, 211.70 feet;



thence North 25 degrees 59 minutes 50 seconds West, 99.17 feet;
thence North 89 degrees 48 minutes 01 seconds West, 264.18 feet;
thence North 68 degrees 10 minutes 44 seconds West, 104.53 feet;
thence North 41 degrees 32 minutes 08 seconds West, 107.29 feet;
thence North 31 degrees 06 minutes 36 seconds West, 195.07 feet;

thence North 13 degrees 44 minutes 43 seconds West, 121.42 feet;
thence North 46 degrees 03 minutes 35 seconds West, 153.93 feet;
thence South 45 degrees 35 minutes 31 seconds West, 225.12 feet;
thence South 58 degrees 09 minutes 25 seconds West, 110.05 feet;
thence North 48 degrees 56 minutes 00 seconds West, 119.00 feet;

thence North 17 degrees 59 minutes 46 seconds West, 124.96 feet;
thence North 41 degrees 09 minutes 12 seconds West, 134.27 feet;
thence North 52 degrees 36 minutes 10 seconds West, 224.41 feet;
thence North 64 degrees 56 minutes 52 seconds West, 185.38 feet;
thence North 62 degrees 29 minutes 57 seconds West, 115.03 feet;

thence North 00 degrees 23 minutes 51 seconds East, 96.02 feet;
thence North 15 degrees 14 minutes 09 seconds East, 209.33 feet;
thence North 22 degrees 22 minutes 45 seconds West, 195.56 feet;
thence North 04 degrees 02 minutes 18 seconds West, 129.75 feet;
thence North 70 degrees 01 minutes 58 seconds West, 128.17 feet;

thence North 79 degrees 51 minutes 25 seconds West, 259.51 feet;
thence South 54 degrees 44 minutes 37 seconds West, 112.84 feet;
thence South 10 degrees 34 minutes 55 seconds West, 116.49 feet;
thence South 03 degrees 28 minutes 03 seconds West, 72.34 feet;
thence South 20 degrees 22 minutes 15 seconds West, 153.51 feet;

thence South 15 degrees 48 minutes 41 seconds West, 136.84 feet;
thence leaving said road South 32 degrees 35 minutes 38 seconds West, 113.65 feet;

thence South 14 degrees 19 minutes 33 seconds West, 69.41 feet;
thence South 35 degrees 36 minutes 53 seconds West, 154.13 feet;
thence South 10 degrees 54 minutes 23 seconds West, 158.56 feet;
thence South 34 degrees 08 minutes 01 seconds West, 65.90 feet;
thence South 01 degrees 56 minutes 41 seconds West, 80.74 feet;

thence South 08 degrees 25 minutes 56 seconds West, 96.64 feet;
thence South 07 degrees 11 minutes 59 seconds West, 110.90 feet;
thence South 20 degrees 36 minutes 20 seconds West, 56.64 feet;
thence South 33 degrees 38 minutes 05 seconds West, 51.93 feet;
thence South 26 degrees 07 minutes 34 seconds West, 202.66 feet;



thence South 17 degrees 54 minutes 44 seconds West, 122.85 feet;
thence South 31 degrees 27 minutes 05 seconds West, 77.73 feet;
thence South 11 degrees 54 minutes 11 seconds East, 61.32 feet;
thence South 26 degrees 42 minutes 16 seconds West, 105.85 feet;
thence South 17 degrees 35 minutes 46 seconds West, 104.84 feet;

thence South 22 degrees 58 minutes 55 seconds West, 59.18 feet;
thence South 00 degrees 43 minutes 43 seconds East, 77.49 feet;
thence South 09 degrees 37 minutes 13 seconds East, 138.71 feet;
thence South 15 degrees 24 minutes 04 seconds West, 143.60 feet;
thence South 01 degrees 21 minutes 51 seconds East, 82.10 feet;

thence South 03 degrees 20 minutes 55 seconds East, 238.10 feet to a point along the centerline of an existing road;

thence continuing along the centerline of said road South 26 degrees 50 minutes 41 seconds East, 73.63 feet;
thence South 29 degrees 18 minutes 41 seconds East, 90.81 feet;
thence South 50 degrees 13 minutes 21 seconds East, 107.41 feet;
thence South 14 degrees 18 minutes 27 seconds East, 150.73 feet;
thence South 35 degrees 32 minutes 24 seconds East, 124.03 feet;

thence South 08 degrees 36 minutes 15 seconds East, 119.19 feet;
thence South 46 degrees 34 minutes 29 seconds East, 112.68 feet;
thence North 82 degrees 54 minutes 48 seconds East, 236.66 feet;
thence leaving said road South 27 degrees 35 minutes 37 seconds East, 129.18 feet to the Point of Beginning.

END OF DESCRIPTION

_____    5/24/07
Ronald D. Hunt                        Date
California Licensed Land Surveyor No. 4570
Expires – September 30, 2008



All that real property located in Section 25, Township 14 North, Range 1 East and Section 30, Township 14 North, Range 2 East, both in Humboldt Meridian, County of Del Norte, State of California, being more particularly described as follows:

BEGINNING at a point that is North 59 degrees 13 minutes 21 seconds East, 978.81 feet from the Quarter Corner to Section 25, Township 14 North, Range 1 East and Section 30, Township 14 North, Range 2 East, both in Humboldt Meridian as shown in the Record of Survey map for Green Diamond Resource Company "Hunter Creek Conservation Easement Area" recorded in Book 14 of Maps, page 122, Del Norte County Records;

thence South 02 degrees 43 minutes 30 seconds West, 67.21 feet;
thence South 32 degrees 39 minutes 40 seconds West, 140.58 feet;
thence South 09 degrees 04 minutes 13 seconds West, 138.18 feet;
thence South 18 degrees 03 minutes 50 seconds West, 75.86 feet;
thence South 24 degrees 02 minutes 47 seconds West, 278.92 feet;

thence South 30 degrees 05 minutes 30 seconds West, 90.41 feet;
thence South 25 degrees 14 minutes 57 seconds West, 55.01 feet;
thence South 23 degrees 32 minutes 42 seconds West, 137.89 feet;
thence South 23 degrees 14 minutes 59 seconds West, 78.26 feet;
thence South 18 degrees 05 minutes 20 seconds West, 298.69 feet;

thence South 21 degrees 36 minutes 00 seconds West, 91.23 feet;
thence South 25 degrees 19 minutes 00 seconds West, 64.02 feet;
thence South 29 degrees 49 minutes 41 seconds West, 78.00 feet;
thence South 43 degrees 58 minutes 36 seconds West, 60.33 feet;
thence South 21 degrees 17 minutes 07 seconds West, 137.64 feet;

thence South 36 degrees 25 minutes 57 seconds West, 102.94 feet;
thence South 30 degrees 51 minutes 59 seconds West, 191.39 feet;
thence North 76 degrees 30 minutes 26 seconds West, 148.32 feet;
thence North 31 degrees 41 minutes 49 seconds West, 94.81 feet;
thence North 22 degrees 39 minutes 04 seconds West, 209.98 feet;

thence North 68 degrees 18 minutes 40 seconds West, 111.39 feet;
thence North 76 degrees 11 minutes 06 seconds West, 154.86 feet;
thence North 62 degrees 51 minutes 32 seconds West, 127.83 feet;
thence North 60 degrees 37 minutes 33 seconds West, 69.06 feet;
thence North 58 degrees 25 minutes 49 seconds West, 122.06 feet;

thence North 59 degrees 05 minutes 35 seconds West, 90.37 feet;
thence North 61 degrees 39 minutes 06 seconds West, 74.67 feet;
thence North 52 degrees 50 minutes 18 seconds West, 115.47 feet;
thence North 48 degrees 39 minutes 39 seconds West, 61.05 feet;
thence North 66 degrees 57 minutes 26 seconds West, 71.30 feet;

thence North 74 degrees 40 minutes 20 seconds West, 99.74 feet;
thence North 48 degrees 36 minutes 21 seconds West, 125.40 feet;
thence North 60 degrees 55 minutes 59 seconds West, 53.67 feet;
thence North 65 degrees 27 minutes 22 seconds West, 140.21 feet;
thence North 06 degrees 31 minutes 21 seconds West, 108.59 feet;

thence North 12 degrees 47 minutes 30 seconds West, 159.45 feet;
thence North 06 degrees 22 minutes 40 seconds West, 119.97 feet;
thence North 03 degrees 08 minutes 25 seconds East, 68.35 feet;
thence North 19 degrees 35 minutes 46 seconds West, 46.59 feet;
thence North 37 degrees 56 minutes 39 seconds West, 93.26 feet;

thence North 04 degrees 33 minutes 52 seconds West, 104.18 feet;
thence North 00 degrees 32 minutes 09 seconds East, 147.21 feet;
thence North 05 degrees 29 minutes 40 seconds East, 53.69 feet;
thence North 31 degrees 46 minutes 59 seconds West, 59.98 feet;
thence North 08 degrees 03 minutes 52 seconds West, 81.88 feet;

thence North 00 degrees 07 minutes 36 seconds West, 323.47 feet;
thence North 13 degrees 44 minutes 44 seconds West, 113.97 feet;
thence North 24 degrees 16 minutes 03 seconds East, 55.36 feet;
thence North 00 degrees 54 minutes 18 seconds East, 84.72 feet;
thence North 38 degrees 50 minutes 18 seconds West, 124.93 feet;

thence North 72 degrees 31 minutes 11 seconds West, 62.52 feet;
thence South 66 degrees 31 minutes 23 seconds West, 128.35 feet;
thence North 87 degrees 12 minutes 21 seconds West, 272.93 feet;
thence North 59 degrees 49 minutes 06 seconds West, 199.84 feet;
thence North 03 degrees 33 minutes 03 seconds West, 121.01 feet;

thence North 23 degrees 15 minutes 45 seconds East, 155.14 feet;
thence North 36 degrees 38 minutes 29 seconds East, 89.47 feet;
thence North 63 degrees 11 minutes 55 seconds East. 186.04 feet;
thence North 58 degrees 31 minutes 10 seconds East, 67.82 feet;
thence North 45 degrees 06 minutes 38 seconds East, 246.40 feet;

thence North 54 degrees 13 minutes 08 seconds East, 67.71 feet;
thence North 51 degrees 46 minutes 34 seconds East, 88.66 feet;
thence North 46 degrees 49 minutes 36 seconds East, 361.85 feet;
thence North 30 degrees 46 minutes 51 seconds East, 151.32 feet;
thence South 83 degrees 12 minutes 59 seconds East, 182.00 feet;

thence North 80 degrees 02 minutes 43 seconds East, 241.41 feet;
thence South 85 degrees 54 minutes 17 seconds East, 169.48 feet;

thence North 85 degrees 33 minutes 00 seconds East, 177.31 feet;
thence South 63 degrees 34 minutes 17 seconds East, 97.40 feet;
thence South 84 degrees 48 minutes 05 seconds East, 125.49 feet;
thence South 13 degrees 53 minutes 32 seconds West, 117.54 feet to a point along the centerline of an existing road;

thence continuing along the centerline of said road South 13 degrees 04 minutes 04 seconds East, 105.81 feet;
thence South 45 degrees 05 minutes 41 seconds East, 95.12 feet;
thence South 63 degrees 31 minutes 15 seconds East, 76.84 feet;
thence South 81 degrees 28 minutes 26 seconds East, 105.95 feet;
thence South 44 degrees 23 minutes 47 seconds East, 171.19 feet;

thence South 53 degrees 42 minutes 10 seconds East, 150.84 feet;
thence South 25 degrees 01 minutes 13 seconds West, 92.09 feet;
thence leaving said road South 50 degrees 23 minutes 39 seconds East, 26.96 feet;

thence South 46 degrees 44 minutes 48 seconds East, 120.26 feet;
thence South 27 degrees 41 minutes 04 seconds East, 82.56 feet;
thence South 36 degrees 24 minutes 20 seconds East, 67.58 feet;
thence South 53 degrees 03 minutes 05 seconds East, 71.43 feet;
thence South 66 degrees 26 minutes 05 seconds East, 104.07 feet;

thence South 50 degrees 10 minutes 22 seconds East, 99.13 feet;
thence South 52 degrees 16 minutes 50 seconds East, 98.06 feet;
thence South 38 degrees 21 minutes 39 seconds East, 190.82 feet;
thence South 30 degrees 59 minutes 46 seconds East, 169.45 feet;
thence South 46 degrees 42 minutes 34 seconds East, 61.39 feet;

thence South 40 degrees 29 minutes 06 seconds East, 150.75 feet;
thence South 43 degrees 40 minutes 24 seconds East, 144.16 feet;
thence South 17 degrees 05 minutes 10 seconds West, 246.31 feet;
thence South 32 degrees 24 minutes 51 seconds West, 39.34 feet to the Point of Beginning.

END OF DESCRIPTION

_____     7/9/07
Ronald D. Hunt                         Date
California Licensed Land Surveyor No. 4570
Expires – September 30, 2008

EXHIBIT C



APPENDIX B

Appendix B - FINAL VERSION

## MEMORANDUM OF UNDERSTANDING
### among the
## U.S. FISH AND WILDLIFE SERVICE and the CALIFORNIA DEPARTMENT OF FISH AND GAME
### and
## SAVE-THE-REDWOODS LEAGUE
### Regarding Management of a
## CONSERVATION EASEMENT FOR THE BIG MYNOT/E.F. HUNTER COMPLEX

## I.  BACKGROUND

This Memorandum of Understanding ("MOU") sets forth those understandings and terms agreed to by the U.S. Fish and Wildlife Service ("USFWS") and the California Department of Fish and Game ("CDFG") (taken together, "the Trustees") and Save-the-Redwoods League ("SRL") (collectively, the "Parties"), regarding the management of conservation easement interests (the "Conservation Easement") in certain real properties located in Del Norte County, California, referred to herein as the "Big Mynot/E.F. Hunter Marbled Murrelet Complex" or the "Property". A description of the Property is attached to this MOU (Attachment 1will be attached after a survey is completed).

The acquisition of the Conservation Easement (Attachment 2) and management of the Property in a manner that enhances and protects breeding habitat for Marbled Murrelets arises from the settlement of a claim for natural resource damages resulting from an oil spill from the M/V *Kure* that occurred in Humboldt Bay, California in November 1997 (the "Spill"). The Trustees have prepared a draft "Damage Assessment and Restoration Plan For the Kure Oil Spill" ("DARP") that sets forth certain restoration alternatives intended to restore Marbled Murrelets and other resources injured as a result of the Spill. This MOU addresses one of those restoration alternatives for Marbled Murrelets.

Pursuant to a Consent Decree entered by the U.S. District Court for the Northern District of California in the matter captioned *United States of America and the State of California v. Kure Shipping S.A. and Patt Manfield Co., Ltd.,* Civil Action No. **X,** (the "Consent Decree") the parties responsible for the Spill ("Responsible Parties") are obligated to purchase a Conservation Easement on behalf of SRL from the owner of the Big Mynot/E.F. Hunter Marbled Murrelet Complex and to deposit $352,933 into a SRL account, the Big Mynot/E.F. Hunter Fund Account. The Conservation Easement is intended to burden and run with the Property, in perpetuity.

## II.  PARTIES

FINAL VERSION

The Trustees are the duly authorized federal and State natural resource trustees, under the Oil Pollution Act of 1990 and other federal and State laws, and act in that capacity in entering into this MOU. They are co-trustees for Marbled Murrelets and share an indivisible interest in the claim for the injury to it.

SRL is a 501(c)(3) nonprofit public benefit corporation whose mission is the acquisition and protection of redwood forests. Since 1918, SRL has been working with communities, businesses and individuals to protect more than 165,000 acres of redwood forests in the State of California.

## III. AUTHORITY

The Parties enter into this MOU under the authority of the Oil Pollution Act of 1990 (OPA), 33 U.S.C. § 2701 *et seq.*; the Fish and Wildlife Coordination Act (48 Stat. 401, as amended), 16 U.S.C. § 661 *et seq.*, the Fish and Wildlife Act of 1956, as amended, 16 U.S.C. 742f(a). *et seq.*, the Endangered Species Act, 16 U.S.C. § 1531, *et seq.*, the Migratory Bird Conservation Act, 16 U.S.C. § 715 *et seq.* ; the California Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, California Government Code § 8670.1 *et seq.*; and any and all other applicable federal and State laws.

## IV. PURPOSE AND OBJECTIVE

The Parties share a general interest and objective in managing, conserving and protecting fish and wildlife resources. Their shared specific objective under this MOU is the protection of Marbled Murrelets, and Marbled Murrelet nesting habitat on the Property, so as to restore Marbled Murrelets injured by the Spill and contribute to the survival of this species.

The purpose of this MOU is to memorialize the Parties' joint intention and understanding with respect to: (a) the monitoring and enforcement of the Conservation Easement, (b) the monitoring of Marbled Murrelet occupancy within the Property, (c) entry of the young forest "Buffer Areas" (as that term is defined in the Conservation Easement) potentially to conduct forest thinning, brush removal, or other forest health activities consistent with the SRL Forest Restoration Plan, and (d) management of the monitoring and enforcement funds received by SRL under this MOU and referred to in the following Section V.

## V. FUND ACCOUNTS

The Big Mynot/E.F. Hunter Fund Account, to be held by SRL, is to be used solely for the purposes set forth herein. The Big Mynot/E.F. Hunter Fund Account, shall contain two separate subaccounts: (1) an administration fund subaccount to be initially funded in the amount of $274,733 (the "CE Administration Fund") to be used by SRL to monitor compliance with the terms of the Conservation Easement and to enforce the Conservation Easement if necessary; and (2) a separate Marbled Murrelet monitoring fund subaccount to be funded in the amount of $78,200 (the "Murrelet Monitoring Fund") to defray the cost of monitoring the use of the Property by Marbled Murrelets.

FINAL VERSION

Under the terms of the Consent Decree, $35,000 of the amount deposited into the CE Administration Fund may be used by SRL to pay for the preparation of a Forest Restoration Plan for the Big Mynot/E.F. Hunter Complex ("SRL Forest Restoration Plan"). Upon completion of the SRL Forest Restoration Plan, in accordance with the Consent Decree, an additional amount approved by the Trustees, not to exceed $105,000, may be transferred by the Responsible Parties to the CE Administration Fund to be used to implement activities described in the SRL Forest Restoration Plan. A separate forest restoration account may, at the discretion of SRL, be set up within the CE Administration Fund (the "Forest Restoration Subaccount") to be used to fund any activities that SRL may elect to perform under the SRL Forest Restoration Plan subject to the provisions of Section VI. A. 4 below.

The parties acknowledge that SRL may create a "pooled enforcement account" which would be available for use to enforce the Conservation Easement and other conservation easements held by SRL. In the event SRL sets up a "pooled enforcement account", an amount approved by the Trustees (not to exceed $20,000), may be transferred from the CE Administrative Fund to the pooled enforcement account in accordance with this MOU and any amendments thereto. Funds in the pooled enforcement account may be used to defray the cost of enforcing the terms of the Conservation Easement and other conservation easements held by SRL.

In the event SRL (or any Transferee) and the Trustees agree that all or some portion of the remaining funds in one of the Fund Accounts is no longer needed to accomplish the purposes of that Fund Account, the Parties may, by written amendment to this MOU, direct that those funds be applied to such other uses as the Parties deem appropriate to further the purposes of this MOU as set forth in Article V below.

The funding provided by the Responsible Parties to acquire the Conservation Easement, create the CE Administration Fund, and create the Murrelet Monitoring Fund is intended to compensate the public, in part, for injuries to Marbled Murrelets caused by the Spill. This funding does not constitute "federal financial assistance", nor a "federal award", as those terms are defined at 31 U.S.C. § 7501, nor is SRL a "recipient" as that term is defined in Office of Management and Budget Circular A-110.

## VI. SPECIFIC OBLIGATIONS OF EACH PARTY

A. SRL shall:

1. Monitor and enforce the Conservation Easement's terms and conditions, and develop and submit to the Trustees annual (or such other time period as the Parties agree) reports for the Property that include a summary of Conservation Easement monitoring results and any enforcement actions taken;

2. Monitor Marbled Murrelet "occupancy" within the Property according to the Marbled Murrelet Monitoring Protocol, as it may be amended by mutual consent of the Parties, (Attachment 3 is the title page of the Protocol) for a period of twenty-two years, and submit to the Trustees periodic reports on the monitoring results;

3. Prepare the SRL Forest Restoration Plan;

FINAL VERSION

4.  For any year in which SRL elects to carry out any forest health activities in the Buffer Areas consistent with the SRL Forest Restoration Plan, SRL shall, prior to the beginning of the calendar year, describe the anticipated activities in reasonable detail in accordance with Paragraph 2(d) of the Conservation Easement and request the Trustees' concurrence with the plan;

5.  Maintain the Big Mynot/E.F. Hunter Fund Account, comprising two separate segregated subaccounts, the CE Administration Fund and the Murrelet Monitoring Fund (each a "Fund Account"), within SRL's investment accounts.  The CE Administration Fund shall be devoted solely to monitoring and enforcement of the Conservation Easement (including documentation of the baseline conditions on the Property), and the Forest Restoration Subaccount, if created, shall be devoted solely to implementation of the SRL Forest Restoration Plan.   The Murrelet Monitoring Fund shall be devoted solely to implementation of the Marbled Murrelet Monitoring Protocol.  Both Fund Accounts may be used for reimbursement of SRL for activities it has performed for these purposes subsequent to X and before the effective date of this MOU if such activities have been approved in writing and in advance by the Trustees. The exclusive management, accounting and reporting obligations associated with these two Fund Accounts shall consist of the following:

(a) Third Party Custodian/Manager; Investments: SRL will provide to the Trustees for approval: (i) the name of any 3rd party custodian of the Fund Accounts; (ii) the name of any investment advisor managing Fund Account investments; and (iii) a description of the investment strategy for investment of funds in each of the Fund Accounts.

(b) Disbursements: SRL may make disbursements of principal, interest and earnings from the Fund Accounts only for the purposes described in this MOU.

(c) Accounting and Records:  SRL shall maintain records related to investment performance of the Fund Accounts and disbursements from the Fund Accounts.  Such records will include the following:

(i)  Investment Reports: The 3rd party custodian and/or investment manager for the Fund Accounts will prepare periodic and annual reports of activities in the Fund Accounts.  SRL will provide copies of such reports to the Trustees.

(ii)  Billing, Rate and Expense Substantiation:  SRL may charge direct and indirect costs of performance under this MOU

4

FINAL VERSION

against the Fund Accounts. For each fiscal year, the SRL will advise the Trustees of the applicable SRL labor, overhead and mileage rates chargeable by SRL under this MOU, and will provide the basis for such rate calculations on request. SRL staff time spent in performance of this MOU will be recorded by date, number of hours worked, and a brief description of the activities performed, to substantiate time billed against each Fund Account. SRL may contract with third parties for goods or services billable against the Fund Accounts. SRL records will include copies of 3rd party contracts and of invoices, receipts and payments submitted and made under such contracts. Expenditures for materials, equipment, travel and other out-of-pocket expenses will also be substantiated.

(d) Audits; Records Retention: SRL will keep and make records associated with this MOU available to the Trustees for a period of 3 years. SRL will engage independent auditors to conduct annual audits of SRL overall operations, including of the Fund Accounts, based on generally accepted accounting principles (GAAP). SRL will provide the Trustees with copies of all annual external audit reports.

6. Facilitate access by employees and agents of the Trustees to the Property in accordance with the terms of the Conservation Easement; and

7. Execute and record a Notice of MOU (Attachment 4) in the official records of Del Norte County, at the same time that SRL records the Conservation Easement.

B. The Trustees shall:

1. Review the annual or periodic Conservation Easement monitoring and enforcement reports submitted by SRL;

2. Review the periodic Marbled Murrelet Monitoring reports submitted by SRL;

3. Review the SRL Forest Restoration Plan;

4. Review SRL's descriptions of any forest health activities proposed for a given year in accordance with the Forest Restoration Plan and concur with them unless the Trustees reasonably find that the proposed activities conflict with the Conservation Values that are to be protected by the Conservation Easement (Trustees' failure to respond in writing to SRL's description of its planned forest health activities within forty-five (45) days shall be deemed concurrence); and

5

FINAL VERSION

  5. Review the financial information submitted by SRL in accordance with VI.A.5, above.

## VII. EXERCISE OF ENFORCEMENT AUTHORITY AND ASSIGNMENT

A. **Failure to Monitor and/or Enforce the Conservation Easement**

Should the Trustees determine that SRL is failing to properly monitor and/or enforce the Conservation Easement, the Trustees shall give written notice to SRL, which notice shall specify in detail the deficiencies noted and the actions that must be taken to remedy the deficiencies.

  1. SRL will have thirty (30) days to notify the Trustees whether it will agree to cure the deficiencies and/or take enforcement action within a specified reasonable time period ;

  2. In the event SRL chooses not to cure the specified deficiencies, or chooses to cure the specified deficiencies and the Trustees subsequently determine that the cure is unsatisfactory, the Trustees may:

   (a) Take Enforcement Action:  The Trustees may take enforcement action(s) in accordance with the terms of the Conservation Easement (the Trustees may not be reimbursed more than $20,000 by SRL for the cumulative costs of their enforcement actions subject to the provisions of VII.D.1 below); or

   (b) Direct Transfer of SRL Interests:  The Trustees may direct SRL to transfer its rights and interests to another tax-exempt nonprofit organization qualified under Section 501(c)(3) of the Internal Revenue Code in accordance with the terms of the Conservation Easement.  With regard to a failure on the part of SRL to properly monitor and/or enforce the Conservation Easement, these are the Trustees' sole and exclusive remedies against SRL.

B. **Assignment of Rights Under the Deed of Conservation Easement.**

Should SRL determine that, as a result of conflicts between SRL and the Trustees as to administration of the Conservation Easement, it is unable to effectively administer the Conservation Easement, SRL may transfer its rights and interests under the Deed of Conservation Easement in accordance with this MOU and the terms of the Conservation Easement.

  1. In the event SRL decides to transfer its rights and interests under the Deed of Conservation Easement to another tax-exempt nonprofit organization, qualified under Section 501(c)(3) of the Internal Revenue Code and qualified to do business in California, and which has as its primary

purpose the preservation, protection, or enhancement of land in its natural, scenic, historical, agricultural, forested, or open-space condition or use, SRL shall provide 90 days written notice to the Trustees of its decision and identify the nonprofit organization to which it intends to transfer its rights and interests (Transferee);

2. The transfer of SRL's rights and interests to a Transferee is subject to Trustee approval, which approval shall not be unreasonably withheld. The Trustees must approve the Transferee and the terms of the transfer prior to the transfer of rights and interests under the Deed of Conservation Easement.

**C. Failure to Implement the Marbled Murrelet Monitoring Protocol**

Should the Trustees determine that SRL is failing to properly implement the Marbled Murrelet Monitoring Protocol, the Trustees shall give written notice to SRL, which notice shall specify in detail the deficiencies noted and the actions that must be taken to remedy the deficiencies.

1. SRL will have thirty (30) days to notify the Trustees whether it will agree to cure the deficiencies within a specified reasonable time period;

2. In the event SRL chooses not to cure the specified deficiencies, or chooses to cure the specified deficiencies and the Trustees subsequently determine that the cure is unsatisfactory, the Trustees may require SRL to transfer implementation of the Marbled Murrelet Monitoring program to the Trustees or to an entity designated by the Trustees.

3. Should SRL determine that, as a result of conflicts between SRL and the Trustees as to implementation of the Marbled Murrelet Monitoring Protocol, it is unable to effectively implement the Marbled Murrelet Monitoring Protocol in accordance with this MOU, and the Trustees have not yet required transfer of the Marbled Murrelet Monitoring program as provided above, SRL may provide ninety (90) days written notice of termination of SRL's role in the Marbled Murrelet Monitoring program to the Trustees. Within that timeframe, the Trustees shall direct SRL to transfer implementation of the Marbled Murrelet Monitoring program to the Trustees or to an entity designated by the trustees.

D.   **Transfer of Funds**

1. In the event the Trustees take enforcement action(s) in accordance with this MOU and the terms of the Conservation Easement, the Trustees may be reimbursed up to $20,000 by SRL for the cumulative costs of such enforcement actions that are resolved in favor of the Trustees except in the

event the Trustees receive only partial reimbursement of attorneys' fees in a judgment, the Trustees shall not be entitled to reimbursement of the remaining unpaid attorneys fees by SRL. Any such reimbursement shall be made from the "pooled enforcement account" or the CE Administration Fund as follows:

(a) In the event SRL establishes a "pooled enforcement account", any such reimbursement shall first be made with funds from the "pooled enforcement account", provided that: (i) the "pooled enforcement account" contains sufficient funds, and (ii) the SRL has not previously expended funds in the "pooled enforcement account" to enforce the terms of the Conservation Easement.

(b) In the event SRL does not establish a "pooled enforcement account" or to the extent that the Trustees are not fully reimbursed for their cumulative costs from the "pooled enforcement account", any such reimbursement shall be made with funds from the CE Administration Fund provided that the CE Administration Fund contains sufficient funds.

2. In the event SRL's rights, obligations, and interests under the Deed of Conservation are transferred, and this MOU is terminated, in accordance with Article XIV., funds from the CE Administration Fund may be used by SRL to pay for any remaining SRL contractual obligations to third parties incurred in connection with the monitoring and enforcement of the Conservation Easement or for activities previously concurred in by the Trustees regarding implementation of the SRL Forest Restoration Plan, including penalties for early termination. SRL shall transfer the balance remaining in the CE Administration Fund to the Transferee.

3.. In the event SRL transfers its obligations regarding the Marbled Murrelet Monitoring program to the Trustees (or to the order of Trustees), or this MOU terminates, the funds from the Murrelet Monitoring Fund may be used by SRL to pay for any remaining SRL contractual obligations to third parties incurred in connection with murrelet monitoring, including penalties for early termination. SRL shall transfer the balance remaining in the Murrelet Monitoring Fund to the Trustees or to their order.

## VIII. TERM

This MOU shall become effective as of the date on which the Responsible Parties deposit money into the Big Mynot/E.F. Hunter Fund Account and will remain in effect for so long as SRL shall hold the Conservation Easement interests in the Property or until terminated pursuant to Article XIV.

## IX. CONDEMNATION OR SALE OF SRL'S INTEREST

8

FINAL VERSION

In the event that the easement or the Property is taken, in whole or in part, by the exercise of the power of eminent domain, acquired by purchase in lieu of condemnation, or sold for any other reason, the share of any amounts received that are allocated to SRL under the terms of the Conservation Easement, or which otherwise represent the value of SRL's interest, shall be transferred to the Trustees.

## X. OTHER CLAIMS

By entering into this MOU, the USFWS and the CDFG assume no liability for injuries or damages to persons or property resulting from any acts or omissions of SRL or its directors, officers, employees, agents, successors, representatives, assigns, contractors, or consultants. The USFWS and the CDFG shall not be parties to or be held out as parties to any contract entered into by SRL or its directors, officers, employees, agents, successors, representatives, assigns, contractors, or consultants in carrying out activities pursuant to this MOU.

## XI. RESERVATION OF RIGHTS

Nothing in this MOU is intended to imply that any signatory is in any way abrogating or ceding any responsibility or authority inherent in its control.

## XII. LIMITATIONS

Nothing in this MOU shall be construed as obligating the United States or the State, or their officers, agents or employees, to expend any funds in excess of appropriations authorized by law.

## XIII.    MODIFICATION OF AGREEMENT

Modification of this MOU must be in writing and approved by the Parties to this MOU.

## XIV. TERMINATION

In the event SRL transfers its rights and interests under the Conservation Easement pursuant to Article VII of this MOU, and in accordance with the requirements of the Conservation Easement, this MOU shall terminate.

## XV. ATTACHMENTS

Attachment 1.  Big Mynot//E.F. Hunter Marbled Murrelet Complex Description
Attachment 2.  Conservation Easement
Attachment 3.  Title Page of Marbled Murrelet Monitoring Protocol

FINAL VERSION

Attachment 4.  Notice of MOU

## XVI. SIGNATORIES/COUNTERPARTS

Each undersigned representative of a signatory to this MOU certifies that he or she is fully authorized to enter into the terms and conditions of this MOU and to bind such signatory, its directors, officers, employees, agents, successors and assigns to this document.  This MOU may be executed in counterparts.  A copy with both original executed signature pages affixed shall constitute the original MOU and be retained by the USFWS.

### FOR THE U.S. FISH AND WILDLIFE SERVICE

By: _____   Date: _____

Steve Thompson
Manager, California/Nevada Operations Office

### FOR THE CALIFORNIA DEPARTMENT OF FISH AND GAME

By: _____   Date: _____

John McCamman
Acting Director

### FOR SAVE THE REDWOODS LEAGUE:

By: _____   Date: _____

10

ATTACHMENT 1



ATTACHMENT 3

# METHODS FOR SURVEYING MARBLED MURRELETS IN FORESTS: A REVISED PROTOCOL FOR LAND MANAGEMENT AND RESEARCH

**Compiled and edited by:**

**Diane Evans Mack**
**William P. Ritchie**
**S. Kim Nelson**
**Elena Kuo-Harrison**
**Peter Harrison**
**Thomas E. Hamer**

For the
Pacific Seabird Group
Marbled Murrelet Technical Committee

**6 January 2003**



**Pacific Seabird Group Technical Publication Number 2**

RECORDING REQUESTED BY:

Save-the-Redwoods League

WHEN RECORDED MAIL TO:

Office of the Field Solicitor
Department of the Interior
1111 Jackson Street, Suite 735
Oakland, California 94605

AND SEND TAX STATEMENTS TO:

_____
Space above this line reserved for Recorder's use

### Notice Of Unrecorded Agreement
(Big Mynot/E.F. Hunter Marbled Murrelet Complex)

Save-the-Redwoods League (SRL), a non profit corporation, holds a conservation easement interest in certain parcels of land located in Del Norte County, State of California, commonly known as the Big Mynot/E.F. Hunter Marbled Murrelet Complex and more particularly described in Attachment A (the "Property"). The Grantor of the conservation easement interest is Green Diamond Resource Company (Green Diamond), a Washington corporation, which is the sole owner in fee simple of the Property.

Notice is herby given that SRL acquired the conservation easement interest in the Property pursuant to a settlement of a claim for natural resource damages in the matter captioned *United States of America and the State of California v Kure Shipping S.A. and Patt Manfield Co., Ltd.,* Civil Action No. X, U.S. District Court for the Northern District of California, and that said conservation easement interest is subject to a Memorandum of Understanding among the United States Fish and Wildlife Service (USFWS), the California Department of Fish and Game (CDFG), and SRL Regarding Management of a Conservation Easement for the Big Mynot/E.F. Hunter Complex dated_____ (the "Agreement").

The purpose of the Agreement was and is to govern SRL's management of the Property, consistent with the terms of its conservation easement interest, so as to enhance and protect habitat on the Property to help restore a species of birds, Marbled Murrelets, that were injured by the November 1997 *M/V Kure* oil spill, and in accordance with a document titled Kure/Humboldt Bay Oil Spill Damage Assessment and Restoration Plan/Environmental Assessment ("Restoration Plan"). A copy of the Restoration Plan is kept at the USFWS Sacramento Field Office located at 2800 Cottage Way, Suite W2605, Sacramento California.

Pursuant to the Agreement, SRL agrees that its conservation easement interest in the Property may only be transferred to another entity approved by USFWS and CDFG. If SRL sells or encumbers its interest in the Property in violation of this obligation or the purposes of the Agreement, the proceeds of such sale or encumbrance will be used to pay the USFWS and CDFG the percentage of the fair market value of the conservation easement interest in the property attributable to the amount paid by the defendants to purchase the conservation easement pursuant to the above-referenced settlement.

///

///

///

///

Attachment 4

In witness whereof, Save-the-Redwoods League has set its hand and seal this      day of        , 2008.

Save-the-Redwoods League

By: _____
Its:

---

State of         California        )
                                   )
County of        _____           )

On _____, before me, _____,
personally appeared _____, personally known to me or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.

_____
Notary Public

**Attention Notary**:  The information requested below is optional, but could prevent fraudulent attachment of this
certificate to unauthorized documents.

| **Signer purports to represent**:<br>Save-the-Redwoods League<br><br>**Capacity Claimed by Signer**: | **Certificate must be attached to document described below**:<br><br>**Title or Type of Document**:<br>Notice of Unrecorded  Agreement<br>(Big Mynot/E.F. Hunter Marbled Murrelet Complex Property)<br><br>**Date Signed**: _____<br># of pages:  _____ |
| --- | --- |

Attachment 4

Green Diamond Resource Company's signature, below, is only to confirm its review of this Notice and the unrecorded Memorandum of Understanding (MOU), that it is affixed with the understanding that it has no liability or obligations under the Notice or the MOU, and that nothing in the Notice or the MOU modifies the rights or obligations of Green Diamond under the Conservation Easement and, if there is any conflict between the terms of the Conservation Easement and the terms of the Notice or the MOU, then the terms of the Conservation Easement will prevail.

In witness whereof, Green Diamond Resource Company has set its hand and seal this   day of __   , 2008.

Green Diamond Resource Company

By: _____
Its: _____

| State of     California     ) | |
|---|---|
| County of     _____     ) | |

On _____, before me, _____, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
Notary Public

**Attention Notary**:  The information requested below is optional, but could prevent fraudulent attachment of this certificate to unauthorized documents.

| **Signer purports to represent:** Green Diamond Resource Company | **Certificate must be attached to document described below:** |
|---|---|
| **Capacity Claimed by Signer:** | **Title or Type of Document:** Notice of Unrecorded  Agreement (Big Mynot/E.F. Hunter Marbled Murrelet Complex Property) <br><br> **Date Signed:** _____ **# of pages:** _____ |

Attachment 4

In witness whereof, the California Department of Fish and Game has set its hand and seal this    day of
2008.

State of California
California Department of Fish and Game


By: _____
Its: _____

---

| State of | California | ) |
| County of | _____ | ) |

On _____, before me, _____
personally appeared _____, personally known to me or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.


_____
Notary Public

**Attention Notary:** The information requested below is optional, but could prevent fraudulent attachment of this
certificate to unauthorized documents.

| **Signer purports to represent:**<br>California Department of Fish and Game<br><br>**Capacity Claimed by Signer:** | **Certificate must be attached to document described below:**<br><br>**Title or Type of Document:**<br>Notice of Unrecorded  Agreement<br>(Big Mynot/E.F. Hunter Marbled Murrelet Complex Property)<br><br>**Date Signed:** _____<br>**# of pages:** _____ |

- 4 -

Attachment 4

In witness whereof, United States Fish and Wildlife Service has set its hand and seal this   day of      , 2008.

Department of the Interior
United States Fish and Wildlife Service

By: _____
Its:

| | |
|---|---|

State of          California          )
                                      )
County of        _____             )

On _____, before me, _____,
personally appeared _____, personally known to me or proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.


_____
Notary Public

**Attention Notary:** The information requested below is optional, but could prevent fraudulent attachment of this
certificate to unauthorized documents.

| Signer purports to represent: <br> Department of the Interior <br> United States Fish and Wildlife Service <br><br> **Capacity Claimed by Signer:** | <u>**Certificate must be attached to document described below**</u>: <br><br> **Title or Type of Document:** <br> Notice of Unrecorded  Agreement <br> (Big Mynot/E.F. Hunter Marbled Murrelet Complex Property) <br><br> **Date Signed:** _____ <br> **# of pages:** _____ |

- 5 -